676 So.2d 1265 (1995)
Guy E. ADAMS, et al.
v.
Charlie Frank ROBERTSON and Liberty National Life Insurance Company.[1]
1931603 to 1931607, 1931610 to 1931617.
Supreme Court of Alabama.
December 22, 1995.
Rehearing Denied February 16, 1996.
*1267 Norman E. Waldrop, Jr., and M. Kathleen Miller of Armbrecht, Jackson, DeMouy, Crowe, Holmes & Reeves, L.L.C., Mobile, for Appellants in 1931603.
Steve C. Olin of Olin & McGlothren, P.C., Mobile, for Appellants in 1931604 and 1931617.
George W. Finkbohner III of Finkbohner & Lawler, Mobile, and C.S. Chiepalich, Mobile, for Appellants in 1931605.
William C. Roedder, Jr., W. Alexander Mosely and J. Michael Fincher of Hand, Arendall, Bedsole, Greaves & Johnston, Mobile, for Appellants in 1931606.
J. Gusty Yearout of Yearout, Myers & Traylor, P.C., Birmingham; and M. Clay Ragsdale IV, Birmingham, for Appellants in 1931607.
John D. Richardson, David F. Daniell and G. Randall Spear of Richardson, Daniell, Spear and Upton, P.C., Mobile, for Appellants in 1931610 and 1931611.
Kent Baxley, Mobile, for Appellants in 1931611.
Roderick P. Stout of Stout & Rossler, Mobile, for Appellants in 1931614.
Philip J. Sanchez IV, Monroeville, for Appellants in 1931615.
Richard L. Thiry and Lester McIntyre of Thiry & Caddell, Mobile, for Appellants in 1931616.
James W. Gewin, Michael R. Pennington and James W. Davis of Bradley, Arant, Rose & White, Birmingham; and Horace Williams, Eufaula, for Appellee Liberty National Life Ins. Co.
Jere L. Beasley, Frank M. Wilson and James Allen Main of Beasley, Wilson, Allen, Main & Crow, P.C., Montgomery; and Walter R. Byars, Jr., of Steiner, Crum & Baker, Montgomery, for Appellee Charlie Frank Robertson, etc.
KENNEDY, Justice.
This is an appeal by approximately 400 objecting class members (hereinafter "Objectors") from a judgment based on a class action settlement regarding cancer insurance policies.
Liberty National Life Insurance Company began selling cancer insurance policies (hereinafter referred to as "old policies") in the 1960's. The policies provided unlimited coverage for radiation, chemotherapy, and prescription drugs to fight cancer. Specifically, the policies covered the costs of radiation and chemotherapy, whether it was done on an inpatient basis or on an outpatient basis. Also, the policies provided coverage for drugs and medicine administered outside the hospital, including pain and anti-nausea medications. As long as the policyholder paid the premiums, the cancer policies could not be canceled and were guaranteed renewable for the life of the policyholder.
According to the objectors, in late 1986 Liberty National began a cancer policy exchange program whereby its agents attempted to persuade those with the old policies to switch to the new policies. The new cancer policies contained some benefits not included in the old policies, such as a first-occurrence benefit, hospice care, and dread disease benefits. However, the new policies contained severe limitations on coverage in comparison to the old policies. Radiation and chemotherapy benefits were each limited to $500 a day. Prescription drugs covered under the new policies were limited to certain "cancer fighting" prescription drugs, while pain and anti-nausea drugs were no longer covered. Outpatient chemotherapy benefits were limited to $8,000 a year.
Liberty National denied the allegations about "switching" policies and contended that the new policies provided substantially greater overall coverage than the old policies and that the new policies have paid substantially greater sums in benefits to those who were diagnosed with cancer.
Liberty National had approximately 400,000 customers with the old policies. The objectors contend that those customers who switched from an old policy to a new policy *1268 did so based upon a pattern and practice of fraud perpetrated by Liberty National.
On May 12, 1992, Charlie Frank Robertson sued Liberty National, alleging that it had fraudulently caused loans to be made against his life insurance policy. On October 2, 1992, the complaint was amended to add new allegations concerning a pattern and practice of fraud that caused approximately 200,000 holders of old cancer policies to exchange their policies for new cancer policies. The amended complaint sought equitable and legal relief for all the policyholders by virtue of a class action, with Robertson as a class representative. Following a hearing, a class was certified. Robertson's original life insurance claim was subsequently settled.
Certain policyholders filed objections to their inclusion in the class. Two different groups of objectors also filed their own class actions involving the cancer policy exchange programs. These class actions were stayed by this Court because where two or more courts have concurrent jurisdiction the one that takes cognizance of the action first retains exclusive jurisdiction until a final determination. Ex parte Liberty Nat'l Life Ins. Co., 631 So.2d 865 (Ala.1993).
Liberty National and counsel for the class began settlement negotiations. On June 16, 1993, Liberty National and the class representatives entered into a settlement agreement. The trial court preliminarily approved the settlement, subject to notice to the class and an opportunity for the objectors to present their objections to the settlement at a fairness hearing.
In August 1993, notice of a class action was mailed to the more than 400,000 policyholders. The notice included a copy of the settlement agreement and advised the class members of their right to object and be heard. Approximately 1,000 of the 400,000 class members filed objections to the settlement.
A fairness hearing was held on January 20, 1994. The trial court heard oral testimony, and written materials were also submitted. On February 4, 1994, the trial court entered an order conditionally approving the settlement so long as the parties agreed to certain court-imposed modifications to the settlement. The trial court stayed its order pending certain objectors' concerns over releasing Liberty National's parent company, Torchmark Corporation, and allowed the objectors to have additional discovery.
On May 19, 1994, the trial court held a final hearing concerning the proposed settlement. On May 26, 1994, the trial court entered its findings of fact and conclusions of law in a 67-page memorandum and made the order final. (C.R. 5656-5721, 5722-34.) Approximately 400 objectors appealed.
The objectors argue that the trial court abused its discretion in denying the objectors the right to a jury trial on their claims against Liberty National. Specifically, the objectors claim that their constitutional right to a trial by jury was violated when the trial court failed to allow them to "opt out" of participating in the class action settlement. An opt-out provision would allow the objectors to pursue their own individual lawsuits against Liberty National based on the same claim.
At the outset, we note that Rule 23 of the Alabama Rules of Civil Procedure reads the same as Rule 23 of the Federal Rules, and we consider federal case law on class actions to be persuasive authority for the interpretation of our own Rule 23. See, First Alabama Bank of Montgomery, N.A. v. Martin, 381 So.2d 32 (Ala.1980).
A class action is a procedural device created solely for the purposes of litigation. The goal of a class action is to provide a simple and efficient way for processing numerous interrelated claims. A class action allows one or more persons, known as class representatives, to sue on behalf of the many persons who have the same, or similar, questions of law or fact as the representatives.
Under Rule 23(a), A.R.Civ.P., certain prerequisites must be met in order for one to proceed with a class action: (1) the class must be so numerous that joinder is impracticable; (2) there must be questions of law or fact common to the class; (3) the claims or defenses of the class representatives must be typical of the claims or defenses of the class; and (4) the class representatives must be able to fairly and adequately protect the *1269 interests of the class. It is undisputed that the prerequisites have been met in this case.
Once the prerequisites are met, the class action must fit within one of the types of classes described in Rule 23(b).
Rule 23(b)(1) provides that a class action may be maintained if
"the prosecution of separate actions by or against individual members of the class would create a risk of
"(A) inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class, or
"(B) adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests...."
A class action may be maintained under Rule 23(b)(2) if "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole."
A class action under Rule 23(b)(3) is appropriate when
"the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action."
Rule 23(b)(1)(A) class actions involve those classes formed if the prosecution of separate lawsuits would create the risk of inconsistent adjudications. A classic example would be separate lawsuits by individuals against a municipality concerning a bond issue, some individuals wishing to invalidate the issue, others to limit it, and still others to enforce interest payments under the bonds. Larry L. Teply & Ralph U. Whitten, Civil Procedure 689 (1994). If one group succeeded in invalidating the bond issue and another succeeded in getting judgments ordering payment of the interest, the municipality would have incompatible standards with regard to the bond issue. Another example of a situation suggesting a Rule 23(b)(1)(A) class action would be where individual lawsuits concerning the rights and duties of riparian landowners could result in inconsistent rulings. Rule 23, F.R.Civ.P. Advisory Committee Notes. There would be a substantial risk of different results if each owner of land along the river were allowed to bring a separate lawsuit regarding water rights.
Rule 23(b)(1)(B) class actions should be maintained if adjudications with respect to individual members of the class would, as a practical matter, be dispositive of the interests of other members or substantially impair the ability of the other members to protect their interests. An example would be where some shareholders seek to force a corporation to declare a dividend. Teply & Whitten, Civil Procedure 690. If the plaintiff shareholders won, then the judgment would be dispositive of the interests of the remaining shareholders.
A class action under Rule 23(b)(2) is permitted when the party opposed to the class has acted or refused to act on grounds applicable to the entire class. Generally, injunctive relief and declaratory relief are the remedies under this type of class action. An example would be where a person was accused of unlawful discrimination against an entire class of people.
Rule 23(b)(3) allows class actions when there are common questions of law or fact among the class members and forming a class is superior to other methods of ending the legal dispute in a fair and efficient manner, *1270 e.g., when joinder of parties would be impracticable because of the large numbers of parties involved. Typically, the relief demanded is damages, and typical examples of a Rule 23(b)(3) class would be lawsuits involving consumer rights or antitrust violations. Typically, a Rule 23(b)(3) class is less cohesive than the other types of classes.
We note that in a class action brought under Rule 23(b)(3), the members of the class are entitled to "opt out" of the class action and pursue a separate lawsuit. See Rule 23(c). Class members in a Rule 23(b)(1) or 23(b)(2) lawsuit do not have the choice of opting out of the class action.
In the instant case, the trial court found that class action certification could be proper under Rule 23(b)(1)(A), Rule 23(b)(1)(B), or Rule 23(b)(2). The objectors argue that the class should have been formed under Rule 23(b)(3) and, accordingly, that they should be allowed to opt out of the class to pursue their own individual lawsuits.
The first issue then is whether the class was properly certified pursuant to Rule 23(b). With regard to class certification, the trial court made certain findings of fact. The trial court's findings were made on the basis of ore tenus evidence and will not be disturbed on appeal unless there is a clear showing that the findings are plainly and palpably wrong, with no evidence to support them. Water Works & Sewer Bd. v. Wingett, 646 So.2d 1331 (Ala.1994); First Alabama Bank, N.A. v. Martin, 425 So.2d 415 (Ala. 1982), cert. denied, 461 U.S. 938, 103 S.Ct. 2109, 77 L.Ed.2d 313 (1983). Additionally, class certification is generally left to the sound discretion of the trial court. Ex parte Gold Kist, Inc., 646 So.2d 1339 (Ala.1994).
With regard to class certification, the trial court found, in pertinent part, that the class consisted of all persons who now are or in the past had been insured under any cancer policy that was issued by Liberty National on or before August 29, 1986, and that provided benefits for radiation, chemotherapy, prescription chemotherapy drugs, and other out-of-hospital prescription drugs without monetary limits and that was paid and in force (or in the grace period) on or after August 29, 1986, regardless of whether such policy remains in force, had thereafter lapsed, or had been replaced by a different Liberty National cancer policy after that date, except those already parties to a lawsuit based on these same facts unless the lawsuit was voluntarily dismissed prior to the settlement. Specifically excluded from the class was any Liberty National insured whose "old" cancer policy had lapsed before August 29, 1986, unless the insured had paid delinquent premiums and the policy had been reinstated, and any Liberty National insured whose first cancer policy was a new policy issued after August 29, 1986.
The remedies available to the class under the settlement were: (1) an injunction prohibiting the institution or continuation or any cancer policy "exchange" program and prohibiting any future practice of exchanging or substituting cancer policies with diminished benefits without full disclosure to the policyholder; (2) full restitution of monetary benefits lost as the result of monetary limits or elimination of coverage contained in the replacement policies for those class members who actually contracted cancer and whose benefits were affected; (3) reformation of all "new" policies currently in force to eliminate monetary limitations on radiation, chemotherapy, and prescription chemotherapy drugs and the exclusion of other out-of-hospital prescription drugs used in the treatment of cancer, whether or not the class member has suffered monetary loss; (4) an injunction against denying otherwise valid future claims under the new policies on the basis of the challenged monetary limits or exclusion of benefits; (5) reinstatement of lapsed policies prospectively without evidence of insurability and without payment of back premiums; (6) an injunction against any increase in premiums before January 1, 1996, or one year from the date of the final order of the court; and (7) an injunction requiring common pooling for all rate filing purposes.
The trial court found that a class could be maintained under Rule 23(b)(2), because it found Liberty National had acted on grounds generally applicable to the class, thereby making equitable and injunctive relief appropriate. The trial court also found that there was a risk of inconsistent results that would *1271 impair Liberty National's ability to pursue a uniform course of conduct and that a Rule 23(b)(1)(A) class therefore would be maintainable. The trial court found that a class action could be maintained under Rule 23(b)(1)(B) because, it found, individual adjudications would be dispositive of the interests of other members not parties to the individual actions or would substantially impair the rights of the class members to protect their interests.
The objectors argue that the class should be certified under Rule 23(b)(3) because, they say, the relief requested is primarily monetary. They contend that the defendants are attempting to couch their damages claims as injunctive relief. Accordingly, the objectors argue that Rule 23(b)(3) is the appropriate type of class action and that under Rule 23(b)(3) they should be allowed to opt out of participating in the settlement, in order to bring individual lawsuits.
First, we note that simply because a Rule 23(b)(1) or (b)(2) class action settlement may ultimately result in an award of money damages does not prevent class certification under those subdivisions. Martin, 425 So.2d at 415. So long as the relief sought is primarily equitable or injunctive, a class action settlement that also includes money damages with a mandatory non-opt-out provision is proper. White v. National Football League, 822 F.Supp. 1389 (D.Minn. 1993), aff'd 41 F.3d 402 (8th Cir.1994), cert. denied ___ U.S. ___, 115 S.Ct. 2569, 132 L.Ed.2d 821 (1995). Nothing in Rule 23 forbids monetary relief when the action is brought under Rule 23(b)(2). Forbush v. J.C. Penney Co., 994 F.2d 1101 (5th Cir. 1993).
The relief awarded in the instant case included an order preventing Liberty National from switching new policies for old policies without informing the insureds of the diminished benefits. Also, Liberty National was ordered to reform the "switched" new policies to include the benefits that had been provided in the old policies. Tellingly, the objectors point out in their brief that of the 400,000 class members, of whom 206,000 had policies fraudulently switched, less than 700 class members received actual money damages. "In other words, less than 1/4 of 1% of the class received money damages under the settlement." (Objectors' brief p. xxii.)
We note that simply because equitable relief has a "value" based on money or has "worth" does not make it monetary relief. For example, if a person is ordered to execute a conveyance of land based on a contract, the land has a money "value," although the relief granted is equitable, i.e., equity acts on the person, by compelling him to fulfill his contract. In this case, the "reformed" policies have an increased "value" to the insureds, but the relief granted was forcing Liberty National to restore the benefits. More importantly, the benefits of a reformed policy are not enforceable unless the insured contracts cancer.
The objectors also argue that the trial court's certification of the class without an opt-out provision violates their right to trial by jury under § 11 of the Alabama Constitution, i.e., that the objectors were deprived of their day in court because the settlement agreement did not provide them a means of opting out of the class in order to pursue their own lawsuits.
In support of their argument, the objectors cite Moore v. Mobile Infirmary Ass'n, 592 So.2d 156 (Ala.1991), and Henderson v. Alabama Power Co., 627 So.2d 878 (Ala.1993). In Moore and Henderson, this Court struck down legislative limits or "caps" on compensatory and punitive damages, respectively, as violating the right to trial by jury. The objectors contend that in this case the violation of the right to trial by jury is more egregious than those violations in Moore and Henderson, where mere limits were placed on the amount a jury could award, in comparison with this case where the right to a jury trial has been eliminated.
We disagree with the objectors' contention that a class action that does not have an opt-out provision is a violation of the right to trial by jury. As stated earlier, a class action is a device created solely for the purposes of litigation. The class action was created to enable a lawsuit to proceed where the number of those interested was too great to permit joinder. Phillips Petroleum Co. v. *1272 Shutts, 472 U.S. 797, 808, 105 S.Ct. 2965, 2972-73, 86 L.Ed.2d 628 (1985). The modern class action follows the same goal, allowing an action when there are common claims and too many parties for proper joinder.
Only those chosen as class representatives will actually be in the courtroom; however, all class members are "having their day in court" through the representative. Those class members who are absent from the courtroom are bound by the judgment, so long as the absent members were adequately represented by the class representatives, represented by a qualified attorney, provided with adequate notice of the proposed settlement, and given an opportunity to object to the settlement. The trial judge must then approve the settlement after analyzing the facts and the applicable law and considering any objections to the settlement. So long as these procedures are followed, courts hold that the absent class members have had their day in court. Therefore, we hold that a class action without an opt-out provision does not violate the Alabama Constitution.
Implicitly, this Court has held that class actions without an opt-out provision do not violate the right to trial by jury. In Martin, 425 So.2d at 417, we held that the fact that a class action may ultimately result in a monetary recovery does not prevent certification under Rule 23(b)(1) or (b)(2).
According to the objectors, a class action brought under Rule 23(b)(1) or (b)(2) would be unconstitutional because those sections include no opt-out provision. The objectors' argument is that a rule of procedure cannot be applied so as to defeat a state constitutional right. By the objectors' rationale, other procedural mechanisms that prevent a jury trial, such as a motion to dismiss for failure to state a claim, a judgment on the pleadings, a summary judgment, and a directed verdict would also violate § 11. We cannot agree with that rationale.
Because the objectors' argument concerning proper certification is based on their desire to opt out of the class, we need not address whether the class would be more appropriately certified under Rule 23(b)(1) or 23(b)(2). We leave this to the trial court's discretion.
The next issue we must address is the trial court's approval of the settlement. The objectors contend that the settlement inadequately compensates the classspecifically, they argue that each class member should be able to seek compensatory and punitive damages for fraud. First, the objectors argue that they should be entitled to compensatory relief for having allegedly paid higher premiums on the new policies. However, the new policies contained benefits that were not part of the old policies, and the settlement adequately remedies the problem by requiring Liberty National to reform the new policies to include the benefits that had been provided in the old policies. Also, there is a freeze on premiums for one year after final approval of this settlement and no valid future claims can be denied based on the benefits excluded in the new policies.
The objectors contend that they should be entitled to funds set up by the settlement to benefit those who contracted cancer, submitted claims, and received less in benefits under the new policies than they would have received under the old policies. The trial court expressly found the assessment of the funds to be punitive in nature. The objectors argue that they should be entitled to share in these funds, because, they argue, Liberty National has not been sufficiently punished for its wrongdoing. However, the objectors failed to argue in their briefs that any of them had contracted cancer, had submitted claims, and had received less in benefits from the new policies.
There can be no settlement without the trial court's approval. Rule 23(e). Requiring the trial court's approval of the settlement protects the class from unjust settlements or voluntary dismissals. The burden is on the proponents of the settlement to show that it is fair, adequate, and reasonable. Holmes v. Continental Can Co., 706 F.2d 1144, 1147 (11th Cir.1983). This Court's standard of review is to determine whether the trial court abused its discretion. Great weight is given to the trial court's views, because that court has been "exposed to the litigants, and their strategies, positions, and *1273 proofs." Ace Heating & Plumbing Co. v. Crane Co., 453 F.2d 30, 34 (3d Cir.1971).
After thoroughly reviewing the trial court's findings of fact and conclusions of law and the order and final judgment, we cannot say that the trial court abused its discretion in finding that the settlement was fair, adequate, and reasonable. We attach those findings and the final order as an appendix to this opinion.
We note that the trial court gave due consideration to the following factors, among others, in approving the settlement: (1) the likelihood of success at trial (including the likelihood of establishing liability on the part of Liberty National); (2) the range of possible recovery; (3) the point on or below the range of possible recovery at which the settlement is fair, adequate, and reasonable; (4) the complexity, expense, and duration of the litigation; (5) the substance and amount of opposition to the settlement; (6) the stage of the proceedings at which the settlement was achieved; and (7) the financial ability of Liberty National to withstand a greater judgment and the potential for a judgment or judgments in an amount or amounts likely to trigger the Due Process considerations (as recognized in Green Oil Co. v. Hornsby, 539 So.2d 218 (Ala.1989)) relating to punitive damages. See, Bennett v. Behring Corp., 737 F.2d 982, 986 (11th Cir.1984); City of Detroit v. Grinnell Corp., 495 F.2d 448, 463 (2d Cir.1974); and Bryan v. Pittsburgh Plate Glass Co., 494 F.2d 799 (3d Cir.1974), cert. denied, 419 U.S. 900, 95 S.Ct. 184, 42 L.Ed.2d 146 (1974). Another factor considered by the trial court was whether proper notice was given. (See pp. 1276 and 1284-1285 of trial court's findings of fact.)
In reviewing the trial court's findings and order, we find particularly interesting the fact that less than 1,000 class members, out of 400,000 (less than 1%) objected to the settlement. Courts have affirmed settlements when substantially larger numbers of the class had objected. See, e.g., Huguley v. General Motors Corp., 999 F.2d 142 (6th Cir.1993) (settlement with no opt-out provision approved over objections by 15% of the class); County of Suffolk v. Long Island Lighting Co., 907 F.2d 1295 (2d Cir.1990) (settlement approved over objections of a majority of the class representatives); TBK Partners Ltd. v. Western Union Corp., 675 F.2d 456 (2d Cir.1982) (approving settlement over objections of a majority of the class); Reed v. General Motors Corp., 703 F.2d 170 (5th Cir.1983) (settlement approved with 600 of 1469 class members objecting).
The last issue raised by the objectors is whether the trial court abused its discretion in "denying [the] objectors' motions to conduct discovery as to the propriety of the class action and the fairness of the settlement." (Objectors' brief at p. 64.)
At the outset of our discussion of this issue, we note that the trial court has broad authority to limit or prohibit discovery by objectors. Weinberger v. Kendrick, 698 F.2d 61 (2d Cir.1982), cert. denied, 464 U.S. 818, 104 S.Ct. 77, 78 L.Ed.2d 89 (1983). "There is no requirement that every objector be allowed to have discovery concerning the settlement itself so that he can personally assure its reasonableness. Such a course would mean that few settlements would be approved, since each member of the class would have the right to keep it open until satisfied...." Robertson v. National Basketball Ass'n, 72 F.R.D. 64 (S.D.N.Y.1976), aff'd, 556 F.2d 682 (2d Cir.1977).
When courts allow objectors to obtain limited discovery, it must be carefully balanced against the risk that full-blown discovery could injure the class as a whole by threatening the settlement and running up costs. Grinnell Corp., 495 F.2d at 463-64.
In this case, the trial court did, in fact, allow limited discovery. Counsel for the objectors had access to discovery conducted by class counsel and to discovery conducted by the Mobile law firm of Armbrecht, Jackson, DeMouy, Crowe, Holmes & Reeves, where the same allegations were made against Liberty National in a separate lawsuit. The objectors were also allowed to depose the actuarial expert for the class and were allowed to participate in depositions concerning Liberty National's parent company, Torchmark Corporation.
*1274 Specifically, the objectors argue that they should have been allowed to depose class counsel in order to determine if there was evidence of collusion in the settlement. First, we note that if the trial court finds that the settlement is fair and reasonable, then the court may assume that the negotiations were proper. In re Corrugated Container Antitrust Litigation, 643 F.2d 195 (5th Cir. 1981), cert. denied, 456 U.S. 998, 102 S.Ct. 2283, 73 L.Ed.2d 1294 (1982). Also, class counsel testified at the fairness hearing and was cross-examined at length by counsel for the objectors. We point out that, in theory, no class action "would ever be settled so long as there was at least a single lawyer around who would like to replace class counsel and start the case anew." Grinnell Corp., 495 F.2d at 463-64.
Based on the foregoing, we affirm the judgment of the trial court.
1931603AFFIRMED.
1931604AFFIRMED.
1931605AFFIRMED.
1931606AFFIRMED.
1931607AFFIRMED.
1931610AFFIRMED.
1931611AFFIRMED.
1931612AFFIRMED.
1931613AFFIRMED.
1931614AFFIRMED.
1931615AFFIRMED.
1931616AFFIRMED.
1931617AFFIRMED.
HOOPER, C.J.,[*] and MADDOX, HOUSTON, INGRAM, and COOK, JJ., concur.
SHORES and BUTTS, JJ., recused.

APPENDIX

IN THE CIRCUIT COURT OF BARBOUR COUNTY, ALABAMA CLAYTON DIVISION

Charlie Frank Robertson, individually and on behalf of a class, Plaintiffs,

v.

Liberty National Life Insurance Company, Defendant.

Civil Action No. CV-92-021

FINDINGS OF FACT AND CONCLUSIONS OF LAW
Pursuant to an Order with Respect To Proposed Settlement entered June 16, 1993, ("Order"), this class action was certified pursuant to Rule 23(b)(2), A.R.Civ.P., was set for hearing, and, by subsequent orders, scheduled to be heard on January 20, 1994, with respect to, among other things, (a) whether a proposed settlement of this action on the terms and conditions set out in the Stipulation and Agreement of Compromise and Settlement executed June 16, 1993 (hereafter "Stipulation" or "Settlement Agreement"), attached to the Order preliminarily approving the settlement is fair, reasonable, and adequate and should be finally approved by this Court, and (b) whether this Court should enter a final judgment approving the settlement, dismissing this action, and enjoining and prohibiting the filing of further litigation with respect to or based on the "Released Claims" as defined in the Stipulation.
After individual and published notice to class members, and an opportunity to submit objections, arguments, and evidence in support of or in opposition to the proposed settlement, a Fairness Hearing was held on January 20, 21 and 24, 1994.
On February 4, 1994, this Court entered an Order Conditionally Approving Class Action Settlement, the full text of which is incorporated herein by reference. The findings and conclusions set forth in that Order are hereby reaffirmed, and made final, the *1275 named parties and their counsel having notified the Court of their acceptance of the modifications to the class action settlement set forth therein. Pursuant to said Order of February 4, 1994, the class action certification pursuant to Rule 23(b)(2) was reaffirmed and the class action was additionally certified pursuant to Rule 23(b)(1)(A) and Rule 23(b)(1)(B) for purposes of settlement.
On February 22, 1994, this Court entered an Order directing certain discovery on the issue of whether defendant Liberty National Life Insurance Company's parent, Torchmark Corporation, had any active involvement in the alleged exchange of cancer policies by its subsidiary. That discovery has now been completed and the parties and objectors have had a full and fair opportunity to present evidence on this and related issues to the Court.
A.R.Civ.P. 23(e) requires judicial approval of all class action settlements, but does not provide any standards for the approval of a settlement. "Decisional law, however, provides [courts] with a general measuring rod for considering settlements: in determining whether to approve a proposed settlement the cardinal rule is that the ... Court must find that the settlement is fair, adequate and reasonable." In re Corrugated Container Antitrust Litigation, 643 F.2d 195, 207 ([5th Cir.] 1981), citing Cotton v. Hinton, 559 F.2d 1326, 1330 (5th Cir.1977). Determining the fairness of the settlement is left to the sound discretion of the trial court. See Bennett v. Behring Corp., 737 F.2d 982, 986 (11th Cir. 1984), citing Cotton, 559 F.2d at 1330. See also In re U.S. Oil and Gas Litigation, 967 F.2d 489, 493 (11th Cir.1992); Holmes v. Continental Can Company, 706 F.2d 1144 (11th Cir.1983); Young v. Katz, 447 F.2d 431, 432 (5th Cir.1971).
The court in reviewing the fairness of a settlement is authorized to make a determination as to whether or not to approve the proposed settlement, or it may make suggestions to the parties for modifications of the settlement proposed. See Cotton v. Hinton, 559 F.2d 1326 (5th Cir.1977).
The 11th Circuit in Bennett, 737 F.2d at 986 (following the lead of the 5th Circuit in Cotton, 559 F.2d at 1330-1331), established a six-factor analysis to guide the trial court's determination that a settlement is fair, adequate and reasonable. Similar factors were established in City of Detroit v. Grinnell Corp., 495 F.2d 448 (2nd Cir.1974); and Bryan v. Pittsburg Plate Glass Co., 495[, 494] F.2d 799 (3rd Cir.1974), cert. denied, 419 U.S. 900[, 95 S.Ct. 184, 42 L.Ed.2d 146] (1974).
In weighing these factors, the trial court does not have "the right or duty to reach any ultimate conclusions on the issues of fact and law which underlie the merits of the dispute." Cotton, 559 F.2d at 1330, citing City of Detroit v. Grinnell Corp., 495 F.2d at 456. Judicial evaluation of a proposed settlement of a class action thus involves a limited inquiry into whether the possible awards of litigation with its risks and costs are outweighed by the benefits of the settlement. See Grinnell, 495 F.2d at 462, citing Young v. Katz, 447 F.2d at 433; accord, Protective Committee for Independent Stockholders of TMT Trailer Ferry, Inc. v. Anderson, 390 U.S. 414, 424-26[, 88 S.Ct. 1157, 1163-64, 20 L.Ed.2d 1] (1986 [1968]).
Judicial evaluation is guided by public policy which strongly favors the pretrial settlement of class action lawsuits. See e.g., In re U.S. Oil and Gas Litigation, 967 F.2d at 493, citing Cotton, 559 F.2d at 1331. The Court's "judgment is informed by the strong judicial policy favoring settlement as well as by the realization that compromise is the essence of settlement." Bennett, 737 F.2d at 986, citing United States v. City of Miami, 614 F.2d 1322, 1344 (5th Cir.1980). This judicial policy favoring settlement is particularly important in the context of class actions. Cotton, 559 F.2d at 1331; Zimmerman v. Bell, 800 F.2d 386, 391 (4th Cir.1986).
These factors and principles have been fully considered by the Court, and as further discussed herein, fully support the approval of this class action settlement.

I. FINDINGS OF FACT

1. Summary of the Proceedings and The Record. In reaching its findings and conclusions *1276 herein, the Court has given great weight to its observations regarding the credibility, demeanor and substance of the live testimony presented at the Fairness Hearing. At the three-day hearing which commenced January 20, 1994, and continued on January 21 and 24, 1994, the following witnesses testified and presented evidence before the Court, in addition to their sworn testimony in the form of affidavits (including some supplemental and rebuttal affidavits): John S. Moyse, Richard H. Gill, Jere L. Beasley, Anthony McWhorter, Thomas E. Hamby, Robert Dobson, Kristie Sayre, William O'Dell, Robert I. Stewart, John W. Miller and Plaintiff/Class Representative Charlie Frank Robertson. The following additional witnesses appeared and testified in open court at the Fairness Hearing: William C. Barclift, III, Champ Lyons, Jr., Ralph Healey, Patrick McGuire and objectors Vernon Adamson, Patricia Mashburn, Theda Enfinger, Pamela Davis, James L. Gould and Louise Peel. In addition, witnesses J. Vernon Patrick, Jr., and Lee Bartlett presented sworn testimony in the form of affidavits and were present in open court and available for examination and cross-examination, which was waived by the objectors; and sworn testimony in the form of affidavits and exhibits was submitted by each of Frank M. Wilson, James Allen Main and Walter R. Byars. The parties and objectors also offered voluminous documents and sworn testimony, including depositions, exhibits and trial testimony in the case of McAllister v. Liberty National, CV-92-3342-RLB (a case tried in the Circuit Court of Mobile County involving the same alleged pattern and practice of company-wide fraud at issue here), and the Court received into evidence virtually the entire record in the McAllister case and the pertinent record in Boswell v. Liberty National, CV-92-3342-FDM, (another cancer exchange case which was the subject of a 12(b)(6) dismissal in favor of Liberty National in the Circuit Court of Mobile County). The Court also received into evidence a multitude of other voluminous exhibits, depositions and documents filed by the parties, intervenors and objectors before and after the hearing, all of which was given due consideration by the Court. The Court is also familiar with the recent Alabama Supreme Court decision reversing and remanding Boswell for further proceedings.
Several of the objectors appeared and testified in person at the January 20 hearing, and no objector was denied an opportunity to be heard in person (or, if they chose, by affidavit) at the January 20 hearing. A vast majority of the objectors were represented by counsel present at the hearing. All of the written objections and related motions and filings, together with the oral testimony and evidence presented by the objectors, have been duly considered by the Court. Each of the objections (and all motions of objectors and intervenors not previously granted) are hereby overruled in accordance with this Court's approval of the settlement as modified. Those rulings expressly made on specific motions at the Fairness Hearing and at the subsequent hearing on May 19, 1994, are specifically incorporated herein by reference.
This Court has given due consideration to all of the evidence presented and all of the arguments made at the Fairness Hearing; all of the briefs and exhibits filed with the Court in support of, or in opposition to, the proposed settlement; the terms and conditions of the Stipulation and its attachments and amendments; the affidavits, exhibits and memoranda filed with the Court in support of and in opposition to the proposed settlement; the objections (and related motions) raised with respect to the proposed settlement; and all of the live testimony presented at the Fairness Hearing.
This Court has presided over all facets of this civil action since it was filed, and is familiar with the legal and factual issues presented by this class litigation. Deeming it appropriate to do so, this Court has given due consideration to the totality of the circumstances and the entirety of the record of this class action. The Court has also given particular consideration to the live testimony presented at the Fairness Hearing and the demeanor and credibility of the witnesses who were examined and cross-examined in open court.
Having given all parties and all members of the plaintiff class the best practicable notice *1277 of the Fairness Hearing and an opportunity to object, submit evidence, appear and be heard in person or by counsel, and the Court having been duly advised, the Court finds that it has before it more than sufficient information upon which to determine the fairness, reasonableness, adequacy, and constitutionality of the Settlement.
2. The Named Plaintiff/Class Representative. Named Plaintiff/Class Representative Charlie Frank Robertson ("class representative" or "Robertson"), prior to August 29, 1986, had purchased from Liberty National Life Insurance Company ("Liberty National") and was the named insured under one of the old cancer policies, which in his case provided family cancer coverage. After August 29, 1986, Robertson terminated this old policy and purchased one of the new policies to replace his old policy. Neither Robertson nor any member of his family has been diagnosed with cancer, and no claim for benefits has been made under Robertson's "new policy."
On October 2, 1992, Robertson amended his existing complaint against Liberty National to assert, on behalf of himself and a purported class, claims arising out of certain alleged cancer policy exchange programs conducted by Liberty National.
The class action complaint, as amended, sought equitable and legal relief, including injunctive and declaratory relief and ancillary monetary relief in the form of compensatory and punitive damages, and a reasonable attorneys' fee. The gist of the complaint was that the alleged cancer exchange programs were implemented pursuant to an intentional pattern and practice of misrepresentation and concealment conceived at the management level of Liberty National and perpetuated against the class as a whole pursuant to an alleged scheme of fraud.
Robertson had filed suit against Liberty National, on or about May 12, 1992, initially asserting claims arising from a life insurance policy issued by Liberty National. All claims arising out of or related to the life insurance policy were thereafter settled in a separate agreement between Robertson and Liberty National. With due consideration for the Court's own supervision of all proceedings from the inception of this case, and the live testimony presented in open court on these issues at the Fairness Hearing as well as the totality of the record, the Court finds that the settlement of this life insurance claim was a fair, arms-length settlement which has no bearing on this Settlement Agreement, and which is in no manner relevant to this class litigation, and in no way impugns the integrity of negotiations regarding the class action settlement.
3. The Alleged Conduct. In simplified terms, the class action claims asserted against Liberty National arise out of a series of cancer insurance policy exchange programs whereby Liberty National allegedly instituted formal or informal exchange programs and practices to offer its cancer policyholders certain "new" cancer policies as replacement for certain "old" cancer policies (as defined in the Stipulation). These "new" or "replacement" policies imposed monetary limits on benefits for radiation, chemotherapy, and prescription chemotherapy drugs, and eliminated coverage for other out-of-hospital prescription drugs prescribed for the treatment of cancer, which benefits were all provided without monetary limitation under the old policies. In some cases, policies were formally exchanged, and in others, exchanges occurred pursuant to lapses of old policies and subsequent purchase of new policies.
The Court finds that prior to August 29, 1986, Liberty National offered policies of insurance providing benefits to policyholders and insureds who were diagnosed with cancer. Certain of those cancer policies ("old policies") provided benefits payable without monetary limits for radiation, chemotherapy, prescription chemotherapy drugs, and other out-of-hospital prescription drugs. Beginning on or about August 29, 1986, and thereafter, Liberty National instituted a series of programs and practices to offer insureds who had "old" cancer policies and who had not suffered internal cancer a replacement of those old policies with one of several new cancer policies ("new policies"), which new policies contained monetary limits for radiation, chemotherapy and prescription chemotherapy *1278 drugs, and eliminated the benefit for other out-of-hospital prescription drugs prescribed in connection with the treatment of cancer ("alleged cancer policy exchange programs"). While the "new" or "replacement" policies also provided certain new or enhanced benefits not provided in the "old policies", certain benefits were reduced or eliminated under the "new policies." As of August 29, 1986, Liberty National discontinued the sale of "old policies", but "old policies" issued prior to that date remained in force. Under both the "old" and "new" policies, all benefits for treatment rendered to any person covered under the policy are payable to the named insured under the policy (or his or her assignee). Beginning in 1990, additional "new policies" were introduced and offered both to holders of "old policies" and holders of the 1986 series "new policies."
Robertson, on behalf of himself and the Class, contended that in the course of implementing the alleged cancer policy exchange programs, Liberty National misrepresented or failed to disclose material facts, including but not limited to the desirability or necessity of replacing the "old policy" with a "new policy"; the relative benefits afforded by the old and new policies and the need or desirability for the insureds to exchange the old policies for new policies (or to exchange one new policy for another new policy); misrepresented the new policies as "better" policies; specifically failed to disclose the monetary limits imposed by the new policy upon benefits for radiation, chemotherapy and prescription chemotherapy drugs; specifically failed to disclose the elimination of coverage for other out-of-hospital prescription drugs prescribed in connection with the treatment of cancer; and failed to adequately inform policyholders that such coverages were provided under their old policies without monetary limits or exclusions.
Class counsel has portrayed Liberty National's conduct as gross, willful and oppressive. Class Counsel has further contended that the fraud resulting from this conduct was a conscious fraud resulting in a company-wide pattern and practice of inducing policyholders to switch from the old policies to the new policies (both through exchange and lapse/reissue) based upon numerous acts of fraud, misrepresentation, and nondisclosure.
Liberty National denies these claims and allegations, and contends that the new policies provide substantially greater overall coverage than the old policies, and that the new policies have paid substantially greater sums in overall benefits to a large majority of those who later were diagnosed with cancer. Liberty National has adduced significant evidence to this effect, including the evidence verified in the credible live testimony and affidavits of Anthony McWhorter and Thomas Hamby, as well as independent actuaries. Liberty National also contends that the limits of the new policies were clearly disclosed in the "new policies" themselves and the written sales brochures that were used to market them.
Without deciding the merits, for the purposes of determining the fairness of the Settlement, the Court has assumed that Liberty National engaged in a company-wide pattern and practice of fraudulent nondisclosure and misrepresentation, and was designed to induce exchanges of cancer policies by healthy insureds by any means possible. If the settlement is fair judged by that standard, then it necessarily is fair given all of the actual risks and uncertainties of the litigation.
Based upon the record, and the assumption that the allegations of a company-wide fraudulent scheme are true, the Court finds that the claims of all class members derive from a common course of conduct pursuant to a unitary scheme; that Named Plaintiff was affected by such conduct and is an adequate representative of the Class with claims typical of the Class; and that Class Counsel are experienced and well-qualified to act as Class Counsel, and have in all respects properly discharged the duties attendant to that role.
4. Findings Regarding The Class Certification, and the Negotiation and Preliminary Approval of the Settlement. On March 10, 1993, this Court entered a class action certification pursuant to A.R.Civ.P. 23(b)(2). The certification hearing was originally convened on October 20, 1992, at which hearing *1279 the named plaintiff and putative class representative Robertson filed and presented affidavits of Robertson, Robert Stewart and John Miller and a brief in support of certification. The named plaintiff/class representative presented sufficient evidence to the Court upon which to obtain preliminary certification of the class. Liberty National's counsel opposed the certification and prevailed upon the Court to delay certification until Liberty National had an opportunity to conduct certain discovery. The certification hearing was thereupon rescheduled for March 8, 1993, at which time substantial arguments for and against certification were presented to the Court prior to its officially convening the certification hearing. Those arguments were only briefly reiterated during the transcribed hearing itself. The nature and tenor of the arguments and position of counsel for both parties, as well as the Court's own decision-making process, negated any possibility of collusion with regard to the March 10 certification order.
The Court is aware that the parties, with the Court's encouragement, had conducted some preliminary settlement negotiations prior to and about the time of the March 10 certification order. The Court is of the opinion and finds, based on its own awareness of settlement negotiations, and based upon the record, that there was no settlement agreement between the parties at the time of the March 10, 1993, certification.
The Court is aware that there is an entry on the docket sheet for this action near the time of the March 10, 1993, certification which appears to indicate that the class action had been "settled." The Court is not aware how or why this entry came to be made on the docket sheet of this Court. However, on March 10, 1993, this Court had not been informed that the class action had been settled, and in fact knew that the class action had not been settled. The Court expressly finds based on the record and the Court's awareness of the nature and tenor of subsequent negotiations between the parties that this entry on the docket sheet of the Court was erroneous. The best judgment of this Court is that the confusion arose from the settlement of the named plaintiff's separate individual life insurance claim, on the one hand, and this Court's oral request to the parties to prepare an order reflecting this Court's decision (on or about March 10) to preliminarily certify the class as to the cancer exchange claims, on the other hand.
5. Conduct of Class Counsel in Vigorously Pursing the Claims on Behalf of the Class. Following the March 10, 1993, certification, the Court continued to encourage the parties to investigate the possibility of a settlement of the complex class action. The parties periodically reported to the Court on their progress toward a settlement agreement. The Court was aware then, and finds now, based upon the record, that the settlement negotiations reached several impasses and were broken off on several occasions. The Court finds from all of the evidence presented to the Court that the settlement negotiations were conducted at arms-length, without collusion, and were the result of hard and intense bargaining by able counsel on both sides.
Settlement was effected more than 8 months after the commencement of this class action. Before executing the settlement agreement, Class Counsel had access to the information furnished by certain clients and Class Members, including Robert Stewart, John Miller and Dan Head, the former President and Vice Presidents, respectively, of Liberty National, which in Class Counsel's opinion, clearly established a company-wide fraud. Stewart and Miller both were deposed and used to establish the fraud liability in the McAllister case, where the plaintiffs were represented by the same counsel appearing for many of the objectors here. Additionally, Class Counsel had extensive access to formal and informal discovery prior to entering into the proposed Settlement. Formal and informal discovery included the production of more than 7 bankers' boxes of documents by Liberty National. Subsequently, several more depositions (and the production of numerous documents) occurred pursuant to the Court's Order of February 22, 1994. Even before then, by informal discovery, John S. Moyse, employed as an actuarial expert by Class Counsel, was given *1280 access, under a protective agreement and order, to all non-privileged Liberty National records relating to the subject cancer policies which he deemed pertinent, and spent over 250 hours collecting and reviewing actuarial information and studies, cancer insurance, policy forms (including a settlement policy form, previously proposed to but not accepted by Class Counsel), rate filings, premium and claim records, documents, reports and claim models of Liberty National, among other things; and interviewing Liberty National's chief actuary, Anthony L. McWhorter, at length concerning the "old" and "new" cancer policies and the cancer policy exchange programs employed by Liberty National subsequent to August 29, 1986, among other things.
The Court has reviewed the discovery filed with the Court and has heard the live testimony of expert Moyse, former President Stewart and former Vice President Miller, including testimony concerning the availability and review of information, the review of various settlement proposals, and review and approval of the final Settlement Agreement which is before this Court. Additionally, in his affidavit, Moyse informed the Court of his role in reviewing various drafts and the final Settlement Agreement, and in calculating the value of this Settlement.
Based upon all of the evidence before the Court, the Court finds that Class Counsel had (and presently have) before them sufficient information, documents and records, together with the benefit of the advice and expertise of actuarial expert Moyse and former Liberty National officers adverse to Liberty National, to properly and fully evaluate the merits of the proposed litigation, and to determine whether the proposed Settlement was fair, reasonable and adequate. The Court further finds that Class CounselJere L. Beasley, Frank M. Wilson, James A. Main and Walter R. Byarsare all experienced trial counsel in complex litigation, including class action litigation, who have properly weighed and balanced the factual and legal issues, and that with an experienced actuary they properly evaluated all settlement proposals and thereafter accepted and recommended to the Court the Settlement Agreement in the good faith exercise of competent and reasoned judgment.
The Court expressly finds that the proposed Settlement was reached after meaningful and sufficient discovery, after arms-length negotiations, by capable and experienced Class Counsel. The Court further finds that after substantial discovery, both informal and formal, with the intent and purpose to effect a fair and reasonable, full and final settlement based on extensive hard-fought, arms-length negotiations, Class Counsel ultimately concluded in good faith that a settlement of the class action litigation on the terms set forth in the Settlement Agreement would be in the best interests of the Class as a whole. The Court expressly finds that the settlement was not the product of collusion. Compare Cotton v. Hinton, 559 F.2d at 1330; Bowling v. Pfizer, Inc., 143 F.R.D. 141 (S.D.Ohio 1992).
In addition to their claims of collusion, certain objectors have directly placed at issue the competence and conduct of a class counsel and specifically whether class counsel has conducted themselves within the standard of care of reasonably competent counsel. See Alabama Code, § 6-5-570 et sec. (1988). As previously noted, the Court finds that class counsel vigorously pursued these claims before recommending settlement to the Court and have, in all respects, properly and appropriately represented the class.
As counsel for the class as a whole, class counsel was prohibited from preferring the interest of a particular class member. In other words, class counsel could not be bound by the fact that many of these objectors (pursuing their individual interests only) would have preferred a settlement which included opt-out rights. Although, in a sense, every class member is a "client" of class counsel, it is the interest of the class as a whole and not the interest of individual class members that class counsel must pursue. Clearly, class counsel have vigorously bargained for the best possible settlement and have ultimately obtained a settlement which this Court finds to be fair and reasonable to all members of the class. This Court finds that class counsel has, at all times, considered *1281 the best interest of the class as a whole and that their conduct in that regard falls well above the minimum standard of care of reasonably competent attorneys provided by Alabama law.
The Court also notes that many of the issues presented by this case are within areas of unsettled law. Counsel for objectors, Champ Lyons, Jr., testified that no attorney could predict what the outcome of a case might be if tried. In addition, Mr. Lyons agreed that the law is very unsettled as to how many individual class members could pursue individual claims and obtain punitive damage awards. It is very unsettled whether the individual class members, as a practical matter, have a claim for punitive damages in light of the decision already rendered in the McAllister case and the possibility of additional punitive damage awards by individual class members who were fortunate enough to reach the courthouse first.
The fact that this Court has suggested substantial additional relief through this settlement prior to approving it should, in no way, reflect on the competence of class counsel or the vigor with which they pursued these claims. By its nature, the Settlement Agreement was preliminary and all parties expected additional discovery and information might well lead to modifications. At any time in the process the Court could refuse to approve the Settlement. This Court finds that considering the substantial benefits provided to the class as a result of the written Settlement Agreement which was preliminarily approved, class counsel would have failed to adequately represent the interest of the class if that proposal had not been presented to this Court for consideration. Based on the Court's analysis of the law and the Court's own independent review, the Court has determined to require the February 4, 1994, changes in the Settlement Agreement.
6. The Proposed Settlement and Settlement Agreement. On June 16, 1993, the parties reached a settlement and executed the Settlement Agreement and presented the same to the Court with their recommendation that the same be preliminarily approved. Thereafter, on June 16, 1993, this Court issued its Order with respect to the Proposed Settlement preliminarily approving the terms of the Settlement, and reaffirming the Rule 23(b)(2) certification of the class, the adequacy of the Class Representative Robertson and Class Counsel, among other things. The Court also issued a refined and clarified definition of the class relating back to the prior class certification on March 10, 1993.
The terms and conditions of the proposed Settlement are described fully in the Stipulation (a copy of which was mailed to the Class Members as a part of the Class Notice pursuant to this Court's June 16 Order), which Stipulation is incorporated herein by the Court. In simplified terms, the Settlement provided extensive injunctive and equitable relief for the common benefit of the Class and Class Members, including the following:
(a) An injunction prohibiting the institution or continuation of any cancer policy exchange programs and prohibiting any future program or practice for the exchange or substitution of cancer policies or coverage with diminished or eliminated benefits without full disclosure to the policyholder;
(b) Full restitution of 100% of any overall monetary loss resulting from the monetary limitations or elimination of coverage contained in the replacement policies;
(c) Reformation of all "new" replacement policies currently in force to eliminate monetary limitations on radiation, chemotherapy, and prescription chemotherapy drugs and the exclusion of other out-of-hospital prescription drugs used in the treatment of cancer, whether or not the Class Member suffered any monetary loss;
(d) An injunction against denying otherwise valid future claims under the new policies for benefits for radiation, chemotherapy, prescription chemotherapy drugs, and other out-of-hospital prescription drugs administered in connection with cancer on the basis of the challenged monetary limits upon or exclusions of said benefits;
(e) Reinstatement of certain lapsed policies prospectively without evidence of insurability *1282 and without payment of back premiums;
(f) An injunction against any increase in premiums prior to January 1, 1995; and
(g) An injunction requiring common pooling for all rate filing purposes.
Additionally, over and above full monetary restitution, the Settlement provided ancillary monetary relief to class members who had suffered cancer and whose benefits were affected by the challenged limitations, in the form of extracontractual or punitive damages placed in two escrowed funds totalling $4 million (plus interest from June 16, 1993, until the date of distribution). In addition to the relief awarded Class Members, the Settlement required Liberty National to pay attorneys' fees to be determined by the Court (not to exceed $4.5 million) and expenses (not to exceed $35,000) plus other specified costs, including fees of experts and consultants (not to exceed $150,000.00), and their expenses. The Settlement provided that these fees and expenses, including the fees and expenses of Class Counsel, would be in addition to the benefits provided under the Settlement, and would not be deducted from Class benefits, so that the class benefits from the Settlement represent a net recovery achieved for the benefit of the Class. Additional injunctive and equitable relief was also provided by the Settlement.
According to the testimony of Class Counsel's actuarial expert, John S. Moyse (live and by deposition and affidavits), the total pecuniary value of the Settlement (before the subsequent modifications set forth in this Court's Order of February 4, 1994) was $39.4 million, plus the value of certain other valuable injunctive and equitable benefits which are not measurable pecuniarily but accrued to the common benefit of the class. The Court finds that the value of the June 16, 1993, settlement was not less than $39 million, before the subsequent modifications set forth in the Court's February 4, 1994, Order Conditionally Approving Class Action Settlement.
The Court finds that Class Counsel's actuarial expert, John Moyse, who testified at the Fairness Hearing and presented his affidavits in support of his expert opinion as to the monetary value of the Settlement, was fully qualified and competent to testify as an actuarial expert, was credible in his demeanor, responsive to questions, and a credible and believable witness who ably asserted (and on cross-examination persuasively defended) his opinions and evaluations as well as his factual testimony. The Court finds that Moyse's conclusions as to the total monetary value of the original Settlement in the amount of $39.4 million as set forth is a well-reasoned and accurate opinion and projection of these values, and that Moyse's projected total value is within the range calculated by Liberty National's chief actuary, Anthony McWhorter, who testified (personally and by affidavits) as an actuarial expert that the monetary value of settlement, in addition to substantial non-monetary benefits in the form of injunctive and other equitable relief, falls within the range of $33.9 million to $49.9 million.
The Court further finds that Anthony McWhorter was qualified as an actuarial expert and competent to testify as to the matters presented to the Court by his live testimony and affidavits, was credible with regard to the matters of his expertise and factual knowledge, was credible in demeanor, and was responsive to the questions. The Court finds that Mr. McWhorter was a credible and believable witness, and that his opinion as to the range of the monetary value of the Settlement is accurate and reliable and reinforces the specific valuation provided by Mr. Moyse.
The Court finds that the testimony of Ralph Healey, tendered by objectors as an actuarial expert, was self-contradictory, unbelievable and at times nonsensical. Mr. Healey's testimony and demeanor were not convincing, and the Court finds that his testimony and analysis of the proposed Settlement is not credible and is due to be disregarded in toto.
Based upon its consideration of all of the evidence, the Court finds that the pecuniary value of the Settlement, and its cost to Liberty National, before the modifications set forth in the Court's February 4, 1994, Order, was not less than $39 million, in addition to other substantial injunctive and equitable relief *1283 which provides additional valuable but non-measurable benefits to the Class. The Court adopts the factual averments of Mr. Moyse concerning the value of the June 16, 1993, settlement as the findings of this Court. The specific benefits and values are fully set forth and explained in Mr. Moyse's October 28, 1993, affidavit which has been reaffirmed in his live testimony and supplemental affidavit, and those values are adopted by the Court and incorporated herein by reference.
The Court's June 16, 1993, Order With Respect To The Proposed Settlement preliminarily approved the Settlement set forth in the Stipulation and ordered notice to Class Members. By its terms, the Settlement Agreement is conditioned upon and subject to (among other things) the final approval of this Court, and final binding affirmance without modification in the event of appeal. In its order preliminarily approving the proposed Settlement, the Court further provided that if the Settlement (with any subsequent modifications agreed to by the named parties and Class Counsel) was not approved (and affirmed without modification in the event of appeal), it shall be terminated and shall become void (except as to certain obligations to pay notice and expert expenses). The June 16, 1993, Order approved the proposed Settlement, on a preliminary basis only, subject to further consideration at a Fairness Hearing to be held by the Court, after an opportunity for the parties and the objectors to submit objections, evidence, briefs, and other materials in support of or in opposition to the proposed settlement.
7. The Notice. The Class Members include the named insureds and other insured family members under approximately 400,000 cancer insurance policies issued by Liberty National primarily in Alabama and 4 other states. Prior to the January 20 hearing, pursuant to the Order, a court-approved notice was delivered by first class mail, postage prepaid, to the last known address of each named insured class member "and family," and a court-approved summary notice of the hearing and Settlement was published in the following newspapers: Clayton Record, Clayton, Alabama; Eufaula Tribune, Eufaula, Alabama; Union Springs Herald, Union Springs, Alabama; Mobile Press Register, Mobile, Alabama; Montgomery Advertiser/Journal, Montgomery, Alabama; Birmingham News, Birmingham, Alabama; Huntsville Times, Huntsville, Alabama, Dothan Eagle, Dothan, Alabama; Anniston Star, Anniston, Alabama; and USA Today, and at least one major newspaper in each other state in which Liberty National cancer policies are approved for issuance. The court-approved notice advised Class Members, among other things, of the pendency of this class action, the background facts and the terms and conditions of the Settlement, and the hearing to be held before the Court with respect to whether the Court should approve the settlement and dismiss this action ("Fairness Hearing"). The Settlement Agreement itself was attached to the notice. The notice advised Class Members that they had a right to object to the settlement, to submit evidence and documents in opposition to the settlement, and to appear and be heard at the Fairness Hearing. A proof of distribution of the notice and proofs of publication in affidavit form were filed with, accepted and considered by the Court.
All interests of class members have been presented to and considered by the Court in one fashion or another. Based upon the evidence before it, including the sworn proof of distribution, the Court finds that the court-approved personal notice delivered to Class Members regarding the class action and the proposed settlement (which notice was in addition to publication of a court-approved notice in more than the 30 enumerated newspapers) was the best practicable notice under the circumstances, was fully consistent with Rule 23(c)(2) of the Alabama Rules of Civil Procedure, and constituted due and sufficient notice of the Settlement and all other matters addressed in the notice and its exhibits, including the pendency of this action, the maintenance of this action as a class action, the terms of the settlement, the binding effect of the settlement on all Class Members, the release and dismissal of all claims, the mandatory no-opt-out provisions of the Class certification and settlement, the proof of claim procedure, the right to object to the settlement and to submit documents *1284 and evidence regarding the settlement, and to appear at the Fairness Hearing and to be heard in person or by counsel. The Court finds that this notice clearly provided absent class members a fair and adequate opportunity to object to the Settlement, and notice that the Settlement (if approved with or without modification) would finally adjudicate and foreclose all claims related to transactions or programs involving the exchange of "old policies" and their replacement with "new policies." See Simer v. Rios, 661 F.2d 655 (7th Cir.1981).
Although objectors' expert Patrick McGuire testified that he might have employed a more simplified and shorter notice, with shorter sentences, the form of the notice provided to Class Members was reviewed, understood and approved by the Court in advance. In effect, the primary criticism of Mr. McGuire was that the notice provided too much information, and used too many words to assure technical correctness. However, the Court finds that the notice itself (exclusive of its attachments) was relatively simple, and the headings in the attached Stipulation taken alone"cash payments to be made in escrow; Class Members insured under old policies which lapsed after August 29, 1986, may reinstate policies; Class Members insured under new policy to receive waiver of limits on benefits; premiums not increased from current rates; Liberty National to provide full restitution of certain benefits to Class Members who have submitted certain benefit claims under the new policies; incidental monetary settlement fund for Class Members who submitted certain cancer claims under new policies; supplemental extra-contractual monetary relief fund for certain Class Members," etc.were clearly understandable and sufficient to convey the principal features of the benefits to the Class Members. Even those who could not read at all clearly had reason to avail themselves of the assistance of counsel or other knowledgeable persons to advise and assist them in protecting their rights. The notice clearly conveyed its nature as a court-ordered notification regarding important matters. The Court finds that the notice was the best practicable notice under the circumstances and constituted due and sufficient notice to afford due process.
To satisfy the requirements of Due Process and the notice standards of Rule 23(e), class notice "need only properly identify the plaintiff and generally describe the terms of the settlement so as to alert members `with adverse view points to investigate and to come forward and be heard.'" Battle v. Liberty National Life Ins. Co., 770 F.Supp. 1499, 1522 (N.D.Ala.1991), quoting Mendoza v. United States, 623 F.2d 1338, 1352 (9th Cir.1980), cert. denied, 452 [450] U.S. 912 [101 S.Ct. 1351, 67 L.Ed.2d 336] [1981]). The Court finds that the notice given in this case clearly meets and exceeds these requirements.
The notice given to all Class Members also attached a Proof of Claim form which contained step-by-step instructions to each Class Member for completion and submission of claims to share in the restitution and monetary settlement pools. The Court finds that the Proof of Claim Form and the attendant procedures were fair, reasonable, adequate, and consistent with procedures used in other class actions.
The Court finds that the notice given to Class Members, which attached a copy of the Stipulation, provided more than sufficient information to the Class Members and constituted due and sufficient notice and afforded due process to the Class Members.
8. The Fairness Hearing. The Fairness Hearing originally scheduled for November 4, 1993, was postponed to December 20, 1993, and was again postponed to January 20, 1994, when it finally convened (after a pre-hearing conference with counsel for the named parties and the objectors on January 19, 1994). The Fairness Hearing took three days to complete, and was held on January 20, 21 and 24, 1994. No objector was refused the opportunity to testify.
By the time of the fairness hearing, all Class Members had a full and fair opportunity to submit objections, affidavits, and other written materials in support of or in opposition to the proposed settlement. The objectors were given the opportunity to depose, *1285 and on October 28, 1993, did depose Class Counsel's actuarial expert, John Moyse, and were furnished copies of all written documents received by Class Counsel from Liberty National which Class Counsel had relied upon in connection with the proposed settlement.
By December 15, 1993, Liberty National had filed and served virtually all of its evidence and written materials and affidavits in support of the proposed settlement, thereby giving objectors more than a month in which to analyze that evidence prior to the Fairness Hearing. In addition, the objectors had substantially earlier possession of or access to a huge volume of discovery generated in McAllister, in which the claims of 19 individual plaintiffs claiming the same pattern and practice of alleged fraud had been consolidated for purposes of discovery. Finally, pursuant to the Court's Order of February 22, 1994, the objectors were given access to and an opportunity to participate with Class Counsel in substantial additional discovery. By virtue of the submissions of both Liberty National and the objectors, the Court has before it virtually the entire McAllister record, including the trial transcript, the trial exhibits, all or virtually all of the more than 40 depositions taken and the reams of documents produced.
This Court has given due consideration to the totality of the record in this case, including the written submissions of the parties and the objectors; the McAllister record; all depositions and documentary and other written evidence; all affidavits filed with the Court; all live testimony presented at the Fairness Hearing; and the demeanor and credibility of the witnesses who gave live testimony. For purposes of this Fairness Hearing, the Court has given due consideration to all exhibits, written materials and testimony submitted to the Court, and has thereby essentially overruled all objections to the Court's consideration of exhibits, written evidence or testimony, except for those exhibits, written materials and portions of testimony which were expressly excluded by the Court's rulings at the Fairness Hearing. The Court finds that the Fairness Hearing and the pre-Fairness Hearing procedures together with the post-Fairness Hearing discovery and subsequent hearings and proceedings constituted a full and fair opportunity for objectors to appear, be heard, and submit evidence and briefs in support of their positions. The Court further finds that the objectors took full advantage of these opportunities.
9. The Fairness of the Proposed Settlement And Adequacy of Representation. After independent review of the proposed settlement, the terms and conditions of the Stipulation, the evidence presented, and the entire record of this civil action, this Court has concluded and hereby finds that the proposed settlement of this class action, pursuant to the terms and conditions of the Stipulation, is fair and reasonable, and as modified in the Court's Order of February 4, 1994 (which modifications were thereafter accepted by the named parties and their counsel), is unquestionably adequate. The Court finds that the Settlement as modified by the Court in its February 4, 1994, Order is in the best interests of the class as a whole and the class members, and should be approved. For purposes of this finding, the Court has assumed as true the allegations of the named plaintiff and objectors concerning Liberty National's conduct.
At the time of its preliminary order on June 16, 1993, this Court after careful consideration was of the opinion that the proposed Settlement, pursuant to the terms and conditions of the Stipulation, was fair, reasonable and adequate, in the best interests of the members of the Plaintiff class, and should be preliminarily approved, subject to further review by the Court based on further development of the issues, including objections, testimony and evidence to be taken in connection with a fairness or settlement hearing. As stated in the notice, this Court reserved the right, following the hearing, to approve the settlement with or without modification and with or without further notice. This Court is authorized to make a determination as to whether or not to approve the proposed settlement, or it may make suggestions to the parties for modifications of the settlement *1286 proposed. See Cotton v. Hinton, 559 F.2d 1326 (5th Cir.1977).
The Court finds that Class Counsel have ably supported the proposed settlement, its fairness, reasonableness and adequacy and have insisted that the settlement as proposed in the Stipulation is in the best interests of the class and should be finally approved by this Court. Based upon the entire record, the Court finds that Named Plaintiff and Class Counsel have each adequately and fairly represented the class, and have protected the best interests of the class as a whole and the class members. The Court further finds that Class Counsel, with the intent and purpose to effect a fair, reasonable and adequate settlement, and based on extensive arms-length negotiations, ultimately concluded that a settlement of the litigation on the terms set forth in the June 16, 1993, Settlement Agreement would be in the best interests of the class, and that not to accept the Settlement (subject, of course, to the ultimate satisfaction and approval of this Court) would serve only to generate a potential punitive windfall for the first few class members who might get to trial and obtain a successful verdict, to the detriment of remaining class members who would potentially be deprived of not only of any recovery, but perhaps deprived of all coverage under any Liberty National insurance policy due to receivership or rehabilitation. The Court further finds that the decision by Class Counsel to agree to and support the proposed settlement was well reasoned, valid and in the best interests of the Class Members.
As stated, this Court was of the opinion, at the time it preliminarily approved the proposed settlement on the terms set forth in the Stipulation, that the proposed settlement was fair, reasonable, adequate and in the best interests of the class and class members. Based upon the entire record, the Court remains of the opinion and finds that the settlement as originally proposed was fair, reasonable and adequate as a redress of the claims of the class members. However, based on the record before the Court following the Fairness Hearing, and upon the Court's review of the evidence and arguments concerning the several pending pre-certification cases which were excluded from (but given the option to join) the certified class, the Court finds that the best interests of the class members can be protected only by the inclusion in the settlement of sufficient punitive equitable and monetary relief against Liberty National to effectively remove and exceed all profits or gain made by Liberty National from the exchange of class members' policies. The Court further finds that the extensive injunctive relief afforded by the Settlement effectively places Liberty National under the continuing oversight of this Court and the spectre of being held in contempt of this Court if Liberty National violates this Court's injunctions, and has a deterrent and punitive effect.
This Court finds that with the modifications to the settlement as set forth in the Court's Order of February 4, 1994, which the Court understands will be accepted by Liberty National, the Named Plaintiff/Class Representative and Class Counsel if there are no other modifications, this settlement will provide substantial, fair, reasonable and adequate relief for the claims of the class, including both the predominant injunctive and equitable relief and substantial monetary relief. The Court further finds that the injunctive and equitable provisions, coupled with the supplementary monetary provisions, both as modified by the Court and accepted by the parties, will constitute sufficient punishment and deterrence to Liberty National from engaging, now and in the future, in conduct of the type made the subject of this class action, particularly in light of the broad and sweeping injunctive relief which effectively places Liberty National under the continuing oversight of this Court, and subjects Liberty National to future contempt citations should Liberty National violate or attempt to violate this Court's broad injunction.
The Court therefore finds that the proposed settlement is due to be approved on the terms and conditions set forth in the Stipulation, with the modifications set forth in the Court's Order of February 4, 1994. The findings and conclusions set forth in the Court's order of February 4, 1994, are hereby *1287 reaffirmed and incorporated herein by reference, and the amendments heretofore agreed to by the named parties in their letters to the Court of December 10, 14, and 15, 1993, are hereby adopted by the Court and approved.
The Court finds that the modifications increasing restitution from 100% to 150% will provide that those class members who suffered cancer but had claims denied due to the challenged monetary limits and exclusions of benefits contained in the new policies, will receive an enhancement on top of full restitution to 150% restitution, to compensate for any loss of the use of the money during the interim and any ancillary mental anguish, pain and suffering.
The Court finds that the enlargement of the period for the premium freeze is required to give class members the benefit of such freeze not only while this action was or is pending here (and perhaps on appeal), but additionally until the settlement is finally approved and affirmed and goes into effect, plus one year. The Court nevertheless finds that as a result of the Settlement more than eleven months of the premium freeze provided in the original Stipulation has already accrued to class members, which is itself a substantial benefit to the Class.
The Court also finds that the modification relating to future rate filings removes any opportunity for Liberty National to recover the costs of this settlement through future rate increases, and precludes Liberty National from doing so.
Additionally, at the Fairness Hearing it came to the Court's attention that Liberty National was not opposed to offering class members, who were insured under the old policies and who provide evidence of their insurability, the option of either keeping the old policy or exchanging that old policy for a new policy, as reformed pursuant to the proposed settlement, at current premiums based upon the class member's age at the time of such exchange, so long as it occurred pursuant to a court-supervised procedure. Consistent with statements made by Liberty National at the Fairness Hearing, the Court's Order of February 4, 1994, provides such an option. Although no legally cognizable claim of entitlement to such relief was presented by any objector, the Court finds that such relief is consistent with the overall intent and purpose of the settlement and is fair, reasonable and adequate.
The Court has heretofore found that the modifications to the proposed settlement set forth in the Court's February 4, 1994, Order would result in the addition of at least $16,000,000 in additional value to the proposed settlement, and the Court hereby reaffirms that finding and all other findings in said Order. The Court further finds that the value of the proposed settlement to Class Members, and the cost of the proposed settlement to Liberty National, was at least $39,000,000 prior to these modifications. With these modifications, the Court finds that the value of the proposed settlement would be not less than $55,000,000.
The Court expressly finds that the cost of this settlement, with such modifications, will exceed any and all gain to Liberty National from the cancer exchange programs and, when coupled with the substantial and far-reaching permanent injunctive and equitable provisions, constitutes the maximum punishment permissible under the Due Process Clause of the United States Constitution and completely sufficient deterrence of future similar practices. The Court finds that the overall settlement will be sufficient to punish Liberty National for the entirety of the effects of the alleged cancer exchange programs and the conduct involved therein. This is of particular significance to the class members, since this portion of the Court's order protects the class members from the greed of those who would attempt a personal award of all constitutionally permissible punitive damages in a single individual case, to the detriment of the class members who are insured under approximately 400,000 cancer policies issued by Liberty National.
The effect of this settlement, with the Court's proposed modifications, is, among other things, by injunction to halt the existing (and prohibit without full disclosure any future) cancer exchange programs, to reform the exchanged new policies to provide unlimited *1288 benefits for radiation, chemotherapy, prescription chemotherapy drugs and other out-of-hospital prescription drugs, to provide punitive damages and full restitution to class members who suffered cancer and received fewer total dollars under a new policy than they would have received under an old policy for the same cancer treatment, plus an additive of 50% to cover the cost of the loss of use of money and any attendant mental anguish, pain and suffering, and to effectively disgorge from Liberty National an amount in excess of its gains (whether or not ill-gotten) from the sale or exchange of cancer insurance policies involved in this class action.
While this Court cannot conclude that the settlement, as proposed in the original Stipulation, was unfair, unreasonable or inadequate, the Court is of the opinion and finds that with the Court's proposed modifications (accepted by parties), the Settlement is undoubtedly fair, reasonable and adequate, is in the best interests of the class and class members, and is protective of the interests of the class as a whole.
10. Additional Findings Regarding Fairness of Settlement. As noted above, the Settlement has been found by the Court to be fair and reasonable even assuming the allegations of the complaint (and the allegations of the various objectors) concerning the alleged conduct to be true. The following additional findings clearly indicate that the Settlement is also fair, reasonable and adequate when judged against the factors utilized by other courts to determine the fairness of a proposed settlement.
Based on the entire record before this Court, as more fully set forth herein, the Court has given due consideration to the following factors utilized by other Courts, including but not limited to:
(1) the likelihood of success at trial (including the likelihood of establishing damages and the likelihood of establishing liability on the part of Liberty National);
(2) the range of possible recovery in the event of a trial;
(3) the point on or below the range of possible recovery at which a settlement is fair, reasonable and adequate;
(4) the complexity, expense and duration of the litigation;
(5) the substance and amount of opposition to the settlement;
(6) the stage of the proceedings at which the settlement was achieved; and
(7) the financial ability of Liberty National to withstand a greater judgment in this case and potential for a judgment or series of judgments in amounts likely to trigger the Due Process curtain (as recognized in Green Oil and other similar cases) relating to the imposition of punitive damages.
See Bennett v. Behring Corporation, 737 F.2d 982, 986 (11th Cir.1984) (adopting a 6-factor analysis); and The City of Detroit v. Grinnell Corp., 495 F.2d 448, 463 (2nd Cir. 1974) (9 relevant factors); and Bryan v. Pittsburgh Plate Glass Co., 494 F.2d 799 (3rd Cir.1974); cert. denied, 419 U.S. 900 [95 S.Ct. 184, 42 L.Ed.2d 146] (1974).
The Court has independently evaluated, to the extent possible at this juncture of the litigation, the strengths and weaknesses of class members' claims, the strengths and weaknesses of Liberty National's defenses, the range of reasonableness of the settlement benefits in light of the best possible recovery, and the other factors identified in the foregoing authorities. The Court has weighed all the attendant risks of litigations (including the litigation and settlement value of the claims of each class member and the aggregate litigation and settlement value of the class action). The Court has also considered the opinions of the expert witnesses and of Class Counsel, the Class Representative and counsel for the objectors. As detailed more fully in the following additional findings, this Court hereby finds that the proposed settlement is fair and reasonable and, as modified, is wholly adequate in terms of both its equitable and legal compensation and its deterrent effect, and is in the best interests of the class and Class Members and protects the class as a whole.
A. Findings Regarding the Risk of Establishing Liability and Damages and Likelihood *1289 of Success at Trial. In determining the fairness of the settlement, the Court must consider the likelihood of success by either party if the case were to proceed to trial. It is not a function of this Court to make ultimate findings on the merits of this case in deciding whether to approve the class action settlement. Although courts must closely analyze the facts and the law relevant to the settlement, this Court need not try the case to determine the fairness of the settlement. Judicial evaluation of a proposed settlement of a class action involves a limited inquiry, not into the merits, but into whether the possible rewards of litigation with its risks and costs are outweighed by the benefits of a certain settlement. See, City of Detroit v. Grinnell Corp., 495 F.2d at 462 ("The court is only called upon to consider and weigh the nature of the claim, the possible defenses, the situation of the parties, and the exercise of business judgment in determining whether the proposed settlement is reasonable"), citing Young v. Katz, 447 F.2d 431, 433 (5th Cir.1971).
While the claims asserted in this action have potential merit, the Court finds that the complexities and uncertainties characteristic of this type of litigation, and the sharply contested issues of fact, liability and damages exist which with respect to the contentions made on behalf of the class, create substantial risk for the class, and that the proposed settlement resolved these uncertainties for all parties to the litigation.
For instance, without deciding the merits, the Court acknowledges that Liberty National has argued that the claims of all or most class members suffer significant legal infirmities and are subject to substantial defenses (in addition to questionable factual basis for liability), including but not limited to: whether claims are barred by the statute of limitations or laches; whether the right to recover survives the death of the insured; whether there is any right to recover alleged differentials in premium rates which are shown on the face of the new policies and which rates were previously filed with the insurance departments in various states; whether the clear written disclosures on the face of the policies and sales brochures preclude any claim of fraud or nondisclosure either as a matter of fact or as a matter of law; and whether class members (such as Class Representative), who have not been diagnosed with cancer and made no claim for benefits under the new policy, have any right to recover or can prove damages given the undisputed fact that the new policies do contain higher benefits in some categories.
On this latter issue, in two cases involving the same pattern and practice of company-wide fraud as in this class action, the Mobile Circuit Court reached opposite conclusions. In Boswell v. Liberty National, CV-92-3343-FDM, the Mobile Court granted summary judgment on the basis of Moore v. Liberty National Life Ins. Co., 581 So.2d 833 (Ala. 1991), and Allen v. Gulf Life Ins. Co., 617 So.2d 664 (Ala.1993). However, the same court, but a different judge, in McAllister v. Liberty National, CV-92-4085-RIB, permitted a case filed by an insured who had not suffered cancer and had filed no claim to go to the jury, and the jury awarded the plaintiff $1,000 in compensatory damages and $1,000,000 in punitive damages. While the Alabama Supreme Court has now reversed and remanded Boswell, it did so in the context of a Rule 12(b)(6) dismissal, such that the allegations of the Complaint in that action were assumed to be true.
The McAllister record includes the closing argument asking the jury to punish Liberty National for the effect of the alleged cancer exchange programs upon Edith McAllister and "thousands of other Ms. McAllisters" affected by the cancer exchange programs. This argument and resulting punitive damages bring into effect another substantial legal issue as to whether Liberty National can be punished further by punitive damages and, if so, the extent of that additional punishment. Likewise of concern would be whether any successful claims of a few insureds would exhaust the punitive damages permissible under the Due Process guaranties of the United States Constitution, Green Oil v. Hornsby, 539 So.2d 218 (Ala.1989), and similar authorities in other jurisdictions.
Based on the evidence and legal authorities submitted by Liberty National, there is a *1290 substantial risk that a large number of the claims of individual class members would be barred by the statute of limitations. For example, approximately half of the class members with cancer incurred their first cancer claim under the new policy more than two (2) years prior to the filing of this lawsuit. Moreover, the new policies contain a clear written facial disclosure that the benefits for radiation, chemotherapy and prescription chemotherapy drugs had monetary limitations, and that other out-of-hospital drugs were not included within the covered benefits. The submitted evidence suggests that there are substantial risks to recovery based on the statute of limitations defense. See, e.g., Fabre v. State Farm Mut. Auto. Ins. Co., 624 So.2d 167 (Ala.1993) (receipt of written documents clearly disclosing facts from which an alleged fraud could have been discovered begins the running of the statute of limitations on a tort action); See also Ramp Operations, Inc. v. Alliance [Reliance] Ins. Co., 805 F.2d 1552, 1554-58 (11th Cir.1986); Kelly v. Connecticut Mutual Life Ins. Co., 628 So.2d 454, 1993 WL 33720 (Ala. Sept. 3, 1993); ("fraud is discoverable as a matter of law for purposes of the statute of limitations when one receives documents that put one on such notice that the fraud reasonably should be discovered."); McGowan v. Chrysler Corp., 631 So.2d 842, 1993 WL 477336 (Ala. Nov. 22, 1993); Kanter [Tanner] v. Church's Fried Chicken, Inc., 582 So.2d 449, 453 (Ala.1991); Gray v. Liberty National Life Ins. Co., 623 So.2d 1156 (Ala. 1993). Similar statute of limitations risks would exist under the laws of other states to the extent that any class member claims that the law of another state might apply, based upon the authorities cited in briefs to the Court.
Other risks result from the questionable factual basis for liability. For example, Liberty National presented substantial evidence that, among other things, the "new policies" in fact pay greater overall benefits to the majority of cancer victims; that the "new policy" overall was a better policy than the "old policy"; that claims of damages were largely speculative or not legally cognizable on the facts developed on this record; that the "new policy" and the accompanying sales brochure clearly disclosed the challenged monetary limits on their face; that any representation was at the time made true or believed by Liberty National to be true; whether any such representation was a statement of fact or a statement of opinion, or "mere puffery"; whether there was any duty of disclosure beyond the disclosures contained in the written policies themselves and the sales brochures distributed with them; and other substantial factual and legal issues which tend to create a risk of establishing liability against Liberty National.
The Court finds and holds, without making any ultimate findings or conclusions regarding the merits of these defenses and obstacles, that there is substantial uncertainty as to the likelihood of success at trial by either party. The Court finds that all of these uncertainties are best resolved by a fair, reasonable and adequate settlement and that such a settlement is in the best interests of the class members.
B. Findings Regarding the Risk of Maintaining the Class Action Through the Trial. The Court finds that there are great risks in maintaining the class action through the trial of this case, including the risk of inconsistent adjudications by this and other courts; the complexity of attempting to manage the class action but for the settlement; the risk that, if the position of objectors were successful, Liberty National could be placed in rehabilitation or receivership by virtue of successful claims of non-class members before final judgment was reached; and the likely duration and complexity of the pretrial proceedings and the trial itself.
C. Findings Regarding the Range of Reasonableness of the Settlement in Light of the Best Possible Recovery. The Court finds that the range of possible recovery value in this action is between zero (if Liberty National's position is sustained) and something in excess of $100,000,000 at best. However, the Court also notes that there is a maximum point at which courts would order a remittur or at which Liberty National would be placed in receivership or rehabilitation.
*1291 The Court finds that the bulk of any award in the higher end of the range would almost certainly be punitive in nature, and the Court further finds that any recovery in excess of $55,000,000 would certainly run the risk of being remitted by the trial court or the Alabama Supreme Court to that amount or lower, pursuant to the Due Process Clause of the United States Constitution, Green Oil Co. v. Hornsby, and similar authorities in other jurisdictions. In addition, any amount in the higher end of the range would almost certainly cause Liberty National to be placed in receivership or rehabilitation proceedings under the applicable insurance laws.
Moreover, there is authority to the effect that potential recovery of damages which are punitive in nature should not be considered in judging the reasonableness of the amount of a class action settlement. See, e.g., City of Detroit v. Grinnell Corp., 495 F.2d 448 (2nd Cir.1974). The nature of punitive damages supports this view, in that no plaintiff has a right to punitive damages; punitive damages under the law of Alabama and various other jurisdictions where available are solely within the discretion of the jury; and punitive damages are designed not to compensate the victim, but to serve societal goals of punishment and deterrence.
The Court finds that the substantial equitable relief granted, and especially the injunctive relief halting the alleged fraudulent practices now and in the future, reforming the insurance policies to remove the limits upon the challenged benefits, and the payment of full restitution, weighs heavily in favor of approving the proposed settlement, and certainly in favor of approving that settlement as modified by the Court. The Court finds that even if it is assumed that the proposed settlement, as modified, might represent less than the total recovery which could be awarded by a jury, there is no assurance that a larger recovery would be upheld by the appellate courts. The proposed settlement as modified represents a significant overall combination of legal and equitable benefits which the plaintiff class otherwise could never enjoy in the event Liberty National were to prevail, or if Liberty National were to go into receivership, rehabilitation or bankruptcy. See, Alliance To End Repression v. City of Chicago, 561 F.Supp. 537, 548 (N.D.Ill.1982) (settlements, by definition, are compromises which "need not satisfy every concern of [the] plaintiff class, but may fall anywhere within a broad range of upper and lower limits."); Flinn v. FMC Corporation, 528 F.2d 1169, 1172-73 (4th Cir.1975); (nor does the fact that the settlement "may only amount to a fraction of the potential recovery ... per se render the settlement inadequate or unfair.")
The Court finds that by any measure the more than $39,000,000 in pecuniary value of the legal and equitable recovery under the proposed settlement, or more than $55,000,000 under the settlement as modified by this Court, represents a substantial benefit and award to the class members and falls well within the range of reasonable and probable recovery in the event of litigation.
Based upon the totality of the record, the Court finds that the settlement has a total cost and value of not less than $55,000,000, which is well within the reasonable range of recovery for this action, even if one were to disregard the substantial risks of this litigation. The Court further finds that a succession of individual suits (if successful) could, and in all probability would, result in a determination "that as a practical matter would be dispositive of the interests of other [class] members ... or substantially impede their ability to protect their interests" (Ala. R.Civ.P. 23(b)(1)(B)), particularly in light of the fact that each individual suit would no doubt attempt to punish Liberty National for the entirety of the "pattern and practice" involved in the alleged cancer exchange programs, thereby potentially eliminating punitive damage claims (and perhaps the viability of all other claims) for all but a few class members if the cases were tried separately. The Court incorporates herein and makes final the additional findings on these issues set forth in its Order of February 4, 1994.
The Court expressly finds that the proposed settlement, as modified at the insistence of the Court, provides the maximum permissible amount of punishment contemplated by the Due Process Clause of the *1292 United States Constitution, Green Oil v. Hornsby, and similar authorities in other jurisdictions. Moreover, in light of all the attendant risks of this litigation, the Court finds that the substantial equitable and monetary relief afforded by this settlement is fair, reasonable, and adequate. The Court therefore overrules all objections to the proposed settlement, and finds that this settlement is fair, reasonable and adequate, and that approval of this settlement (as modified) is in the best interests of the class as a whole.
D. Findings Regarding The Complexity, Expense And Likely Duration Of The Litigation. The Court finds that this litigation involves asserted liability to a class of some 400,000 named insured policyholders (plus their additional insured family members). The Court finds that this litigation is extremely complex, and that both the expense and likely duration of the litigation (but for the settlement) would be great.
The alternative to settling class members' claims is to expend countless hours and dollars litigating this case, and to drain the assets of all parties and the resources of the Court system for years. This class action constitutes complex litigation, and the voluminous pleadings, evidentiary filings and briefs which have already been filed in this Court (and in the Supreme Court) demonstrate that, absent settlement, even the legal issues alone would be difficult and expensive to resolve. The Court file itself is demonstrative of the substantial resources that have already been committed by Class Counsel, by Liberty National and its attorneys, and by this Court. In addition to the resources of the parties, the continuation of this complex case would likewise deplete the judicial resources of this Circuit. There can be no question that further pursuit of this class action would constitute a severe drain on the resources of both the parties and the Court system. See e.g., In re U.S. Oil and Gas Litigation, 967 F.2d 489, 493 (11th Cir.1992); ("Public policy strongly favors the pretrial settlement of class action lawsuits. See Cotton v. Hinton, 550 [559] F.2d 1326, 1331 (5th Cir.1977). Complex litigationlike the instant casecan occupy a court's docket for years on end, depleting the resources of the parties and the taxpayers while rendering meaningful relief increasingly illusive.")
E. Findings Regarding The Reaction of The Class and The Substance and Amount of Opposition to The Settlement. In determining whether the settlement is fair, reasonable and adequate, the Court considered the substance and amount of opposition to the settlement. The reaction of the vast majority of the class to the settlement is clearly not antagonistic. The court-approved printed notice was mailed to the insureds under more than 400,000 current and past cancer policies, and summary notices regarding the settlement were placed in more than 30 newspapers. At most less than ½ of 1% of the Class Members (including insured family members) filed timely objections, even given the Court's decision to accept late objections filed on or before January 20, 1994. In many cases, multiple members of the same family filed objections to the settlement even though they were all insured under a single family policy.
Thus, the amount of opposition is not substantial when compared to the size of the class. However, a settlement can be fair even where (unlike here) there is a large number of objectors. Bennett v. Behring Corporation, 737 F.2d 982, 988 (11th Cir. 1984); Pettway v. American Cast Iron Pipe Co., 576 F.2d 1157, 1217 (5th Cir.1978); Cotton, supra.
No class member has provided a sound, objective reason for denying approval of the settlement, nor suggested any other reasonable form of settlement which would adequately address the interests of all class members. The Court finds that the objectors have made their position quite clear: they want to be excluded from the class action so that they can pursue their own individual interests in seeking to recover for themselves the maximum punitive damage award for the entire pattern of alleged conduct, even though at best such a scenario might result in a substantial recovery to some but not to all. This Court is of the opinion and finds that to permit opt-outs is not in the best interest of the Class.
*1293 In general, other grounds of objection either resulted from a misconstruction of the proposed settlement agreement or have been cured by virtue of the clarifications set forth in the Court's February 4, 1994, modifications of the proposed settlement. Moreover, the differing allocations to certain class members under the Settlement are rationally based on legitimate considerations, such as whether the class member had previously suffered cancer and incurred cancer claims. Moreover, there is no rule that a settlement must benefit all class members equally. See Holmes v. Continental Can Co., 706 F.2d 1144, 1148 (11th Cir.1984 [1983]); Kincade v. General Tire and Rubber Co., 635 F.2d 501, 506 n. 5 (5th Cir.1981). Even if the complaining class members show that there is some degree of difference in the settlement agreement that showing may be rebutted by a factual showing that the differences are rationally based on legitimate considerations. Holmes, 706 F.2d at 1148.
Several of the class members objected to having to continue doing business with Liberty National in order to receive any benefits of this settlement. The Court finds that while some benefits are available only if certain class members or objectors continue to do business with Liberty National, the benefits to all class members are substantial and the fairness to all segments of the class member population override the inconvenience of those few objectors who do not wish to continue to do business with Liberty National. Moreover, the Court finds that any class member receiving the reformed policy under the terms of this settlement is receiving benefits which include all the increased benefits of the "new policy" plus unlimited coverage for radiation, chemotherapy, chemotherapy prescription drugs and out-of-hospital prescription drugs, which coverage is not generally available for purchase in the marketplace. The availability of this "best of both worlds" coverage is an overall benefit which is in the best interests of the class as a whole and must prevail over the individual concerns of a few objectors. The option to receive the benefits afforded by this settlement is itself a benefit, whether the option is exercised or not.
In addition to having considered the objectors' objections to the proposed settlement, and the arguments by some objectors that they should be permitted to opt out of this class action, this Court has independently evaluated the terms of the proposed settlement of this class action, and has independently compared the benefits which members of the class will receive under the terms of the Stipulation with the likely rewards of litigation in order to determine whether the settlement of this action pursuant to the Stipulation is fair, reasonable and adequate and is in the best interests of the members of the Plaintiff Class, notwithstanding the fact that only a fraction of 1% of the class members have objected to the proposed settlement.
F. Findings Regarding The Stage of the Proceedings and the Amount of Discovery Completed. Settlement was effected more than eight months after the commencement of this class action. The Court finds that counsel for the plaintiff class and the actuarial expert employed by Class Counsel had extensive access to information, documents and other discovery (both formal and informal), prior to entering into the proposed settlement.
The Court has reviewed the discovery filed with the Court and has heard the live testimony of expert Moyse, former President Stewart and former Vice President Miller's concerning the availability and review of information and the review of preliminary drafts of proposed settlement agreements. Additionally, Moyse informed the Court of his role in reviewing various drafts and the final Settlement Agreement and in calculating the value of the benefits in earlier drafts and the final draft of this Settlement for the benefit of Class Counsel.
The Court finds that Class Counsel conducted a substantial factual investigation, and had before them sufficient evidence upon which to base their agreement to the proposed settlement. The Court further finds that, based upon a review and evaluation of that information, including the documents and filings with the Insurance Department, *1294 the information furnished by former officers of Liberty National, access to Liberty National's records and interviews with Liberty National's chief actuary, Class Counsel had more than adequate information to properly evaluate, with the assistance of the actuarial expert and former Liberty National executives, the proposed settlement, and that Class Counsel were adequately informed, and had before them sufficient information and evidence upon which to base their evaluation of and agreement to the proposed settlement, and based thereon, reached a proposed settlement which Class Counsel felt to be fair, reasonable, adequate and in the best interests of the class. Certainly the record now before the Court is sufficient to form a basis for Class Counsel's current recommendation that the settlement be approved.
In the process of encouraging and checking on settlement progress, the Court has personal knowledge, the testimony before this Court demonstrates, and, based upon the entire record, the Court finds that the settlement discussions and negotiations were conducted between class counsel and counsel for Liberty National at arms length over a several-month period of time during which counsel remained adversarial, and that such negotiations were free from fraud or collusion.
The Court further finds that Liberty National's stipulation to the maintenance of this action as a class action for purposes of settlement is a practice well supported by prior precedent, and constitutes no evidence whatsoever of any collusion. Based upon the entirety of the record, the Court finds that there was no collusion in connection with this settlement.
G. Findings Regarding the Ability of Defendants to Withstand A Greater Judgment. The Court finds that Liberty National Life Insurance Company's statutory net worth is $327,000,000, according to the last statutory statement filed by Liberty National with the Alabama Department of Insurance prior to the Fairness Hearing. The Court notes that there is also a $10,000,000 liability insurance policy insuring Liberty National which has been the subject of a claim for coverage by Liberty National with respect to this litigation. The Court finds that claim for coverage has been denied by the insurer, and that the matter is presently in litigation. The Court concludes that the chances of recovery by Liberty National under this insurance policy must be deemed speculative for purposes of this settlement, but in any event would not alter this Court's opinion of the settlement.
With some 400,000 named insureds (plus their additional insured family members) in the class, even an award of $1,000 each would far exceed Liberty National's statutory net worth. Moreover, if one were to assume a succession of large individual punitive damage judgments, such a scenario would not only exhaust the availability of funds from which class members and later individual suits could be compensated, but would also eliminate the insurance coverage Liberty National provides not only to its cancer insurance policyholders, but to its holders of life insurance policies, accident policies, and all other Liberty National insurance policies.
Without adjudicating the merits, the Court further finds that there is a substantial risk that a succession of individual "pattern and practice" punitive damage suits on these claims, if even a few were successful, could have the effect of placing Liberty National in receivership or rehabilitation proceedings long before its total assets are depleted. The Court further finds for the purposes of settlement that, pursuant to the Due Process Clause of the United States Constitution and the principles set forth in Green Oil and similar authorities in other jurisdictions, if individual damage suits were successful, there is a virtual certainty that before each of the class members insured under the approximately 400,000 cancer policies at issue had an opportunity to bring a suit against Liberty National to a final judgment, Liberty National would be ruled to have been punished to the maximum amount constitutionally permissible for the alleged common conduct, and therefore immune from any further liability for punitive damages. The Court finds that if some class members pursuing their individual lawsuits were able to obtain substantial verdicts against Liberty National for punitive damages, at some point the balance *1295 of the later class members would be unable to obtain any punitive damages, even if Liberty National had funds to pay those claims. The Court must observe that if only 327 of the class members pursuing individual claims received $1,000,000 in punitive damages (as did the plaintiff in McAllister), the total net worth and assets of Liberty National would be exhausted, and at some earlier time the Due Process "curtain" would have fallen (and probably receivership or rehabilitation proceedings instituted).
As parent of Liberty National, Torchmark is a released party under the settlement. And generically, Torchmark, to the extent it is alleged to be an entity "in concert with Liberty National" in Liberty National's alleged cancer policy exchange programs, would be enjoined under the settlement from perpetuating or participating in any future cancer exchange programs. Even assuming that Torchmark was "in concert with" Liberty National, Torchmark by being enjoined would have parted with consideration in support of its release as "parent."
Moreover, while some objectors have intimated that Torchmark may have somehow profited from Liberty National's conduct by virtue of its ownership of the outstanding stock of Liberty National, any such profit by Torchmark was necessarily derivative of the profits made by Liberty National. The Court has previously found and hereby reaffirms that the cost and value of this settlement removes and exceeds any and all profit or gain which Liberty National Life could possibly have received from the alleged cancer exchange programs, and that the cost and value of the settlement, together with the strong deterrent effect of the broad and sweeping injunctions set forth in the settlement and the spectre of contempt created thereby, are more than sufficient consideration for the release set forth in the settlement. The Court notes that it is standard practice for a defendant to insist upon, and the plaintiff to provide, a release of all affiliates of the defendant in connection with a typical settlement of outstanding claims (see e.g. Grimes v. Vitalink Communications Corp., 17 F.3d 1553, 1994 WL 70482 (3rd Cir. March 9, 1994)), and the Court expressly finds the release set forth in the settlement to be fair. This Court expressly finds that this settlement would be equally fair, reasonable and adequate if Torchmark were a named defendant, with no further enhancement of the relief provided by the Settlement.
Torchmark's other acts or omissions sought to be developed in the evidence do not justify the imputation of liability or the piercing of the Liberty National corporate veil to reach Torchmark. Based upon the discovery conducted on this issue and the entire record before this Court, the Court finds that there is no substantial basis upon which Torchmark could be held liable for the conduct here at issue, and that the value of the settlement to the class far outweighs any possibility of successful pursuit of any such claim. Cf. In re Silicone Gel Breast Implant [Implants] Products Liability Litigation, 837 F.Supp. 1128 (N.D.Ala.1993); In re Birmingham Asbestos Litigation, 619 So.2d 1360 (Ala.1993); Mussick [Messick] v. Moring, 514 So.2d 892 (Ala.1987); First Health, Inc. v. Blanton, 585 So.2d 1331 (Ala.1991).
In McAllister, a similar pattern and practice fraud claim arising out of the cancer policy exchange programs of Liberty National, a judgment for the defendant Torchmark was entered despite the availability of abundant information concerning Torchmark which was revealed to this Court. The McAllister record contains numerous unsuccessful efforts to sustain the fraud claim against the parent Torchmark.
In sum, the Court is of the opinion and finds that this Court would have ordered no greater modification to the proposed settlement, if Torchmark had been a party to this litigation. The release of Torchmark does not render the settlement unfair. Deletion of Torchmark from the release would render the settlement void, and therefore is not in the best interests of the Class.
11. Findings Regarding No Opt-out Provisions of the Settlement. The Court hereby finds that the predominant relief provided for in this settlement (and the predominant relief justified and desirable for the class as a whole) is equitable relief for purposes of Rule *1296 23(b)(2). The Court finds that while much of the equitable relief has a punitive effect, particularly in that the equitable relief extends to persons whose claims might otherwise be barred by various legal defenses, it remains equitable for purposes of Rule 23(b)(2). The Court finds that, assuming the allegations of the complaint to be true, Liberty National has acted on grounds generally applicable to the class, thereby making appropriate final equitable and injunctive relief with respect to the class as a whole, and that the nature of the interest of the class members and the nature of the settlement, and the fact that the vast majority of class members have not suffered cancer and have not suffered any denial of benefits, make this action appropriate for certification pursuant to Alabama Rule of Civil Procedure 23(b)(2). Cf. First Alabama Bank of Montgomery, N.A. v. Martin, 425 So.2d 415 (Ala.1982), cert denied, 461 U.S. 938 [103 S.Ct. 2109, 77 L.Ed.2d 313] (1983); Penson v. Terminal Transport Company, 634 F.2d 989 (5th Cir. 1981); Kincade v. General Tire & Rubber Co., 635 F.2d 501, 502-08 (5th Cir.1981); Robinson v. Lorrilard [Lorillard], Corp., 444 F.2d 791 (4th Cir.1971); Robertson v. National Basketball Association, 556 F.2d 682 (2nd Cir.1977); Nottingham Partners v. Dana, 564 A.2d 1089 (Del.1989); Nottingham Partners v. Trans-Lux Corp., 925 F.2d 29 (1st Cir.1991).
While the Court finds that this action satisfies the requirements of Rule 23(b)(2) separate and apart from whether or not it satisfies the requirements of Rule 23(b)(1), this Court in its Order of February 4, 1994, the entirety of which is hereby made final and incorporated by reference herein, found that the requirements of Rules 23(b)(1)(A) and 23(b)(1)(B) are also met. The Court hereby reaffirms all findings and conclusions made in its order of February 4, 1994.
This Court is of the opinion and finds that to permit opt-outs is not required under the circumstances of this case; is not in the best interests of the Class; and would create a risk of a race to the courthouse by those permitted to opt-out in an effort to obtain for themselves alone the entirety of the constitutionally permissible punitive recovery in one or a few individual actions, and would result in the Settlement being declared a nullity, thereby depriving all class members of the substantial benefits offered by the settlement.
The Court finds that the settlement is fair, reasonable and adequate, and that the provisions precluding opt-outs by class members are also fair, reasonable and adequate considering the totality of the record and of the circumstances of this case. The Court expressly finds that settlement of this class action on a no-opt-out basis is valid in all respects and is in the best interests of the class as a whole.
12. Findings Regarding The Scope Of the Release. As is customary, the Settlement contains a release of class members' claims. Compare Nottingham Partners v. Trans-Lux Corp., 925 F.2d 29 (1st Cir.1991); Grimes v. Vitalink Communications Corp., 17 F.3d 1553, 1994 WL 70482 (3rd Cir. March 9, 1994). Some of the objectors have suggested that the release is too broad in that the settlement might be construed to release claims beyond the scope of this litigation and the "cancer policy exchange programs" conducted by Liberty National. The release relates to "all claims, causes of action and liability ... in any way based upon or related to any allegation of fraud, misrepresentation, concealment, failure to disclose or other tortious conduct or breach of duty ... regarding (1) the alleged cancer policy exchange programs, (2) any other transaction resulting in the issuance of a new policy providing cancer coverage for a Class Member previously insured under an old policy, or (3) the failure to offer or issue any Class Member a new policy...."
The Court finds that the release is intended to cover and does in fact cover any frauds or other claims which arose out of transactions involving the exchange (or offer to exchange) of (or failure of Liberty National to offer or exchange) "old policies" for replacement with "new policies" (as defined in the Stipulation), including but not limited to (i) any representations made to insureds under old policies that may have induced them to exchange existing coverage for new policies; *1297 (ii) any claim by old policyholders that their premiums increased because other old policyholders exchanged their old policies for new policies and those new policies were placed in a separate experience or rating pool; (iii) claims based upon failure to offer a particular insured under an old policy the opportunity to exchange it for a new policy; and (iv) any other claim based upon any aspect or effect of the alleged cancer exchange programs or any transaction involving such an exchange or of the alleged cancer policy exchange programs, including any subsequent exchanges by classmembers from one new policy to another. The Court further finds that the release is not intended to cover, and does not cover, representations, suppression or other conduct unrelated to the cancer exchange programs.
The Court retains jurisdiction to enforce the permanent injunction against assertion of Released Claims provided for in the proposed settlement and which will be issued by this Court in conjunction with its approval, so that any further disputes regarding the scope of the release can be resolved by an appropriate motion for relief from the permanent injunction or from the release at such time as this Order is adjudicated on appeal (or the time for appeal has expired).
While the release is broad, the broad and substantial relief afforded by this settlement, after modification at the insistence of this Court, including the substantial equitable relief and the monetary amounts being paid by Liberty National to or for the benefit of the Class Members, would not be available if it did not effect a final and complete resolution of any claim of Class Members relating in any way to the cancer exchange programs or to any transaction involving the exchange of (or failure to exchange) old policies for new policies. The release is due to be enforced as written and agreed to by the parties in the Stipulation, and as herein set forth.
13. Findings Regarding Contacts Between Class Claims And State Of Alabama. The Court finds that this litigation has significant contacts, and a significant aggregation of contacts, with the State of Alabama. Liberty National's principal place of business is in Birmingham, Alabama. Of the more than 3,400 employees of Liberty National, at least 1,500 full-time employees are employed in the State of Alabama. It has more full-time employees in Alabama than in any other single state. Liberty National's bank accounts used for disbursements of funds for payroll and for payment of insurance claims are all located in the State of Alabama. Similarly, as of August 29, 1986, a total of 396,712 old cancer policies were in force or in the grace period, of which approximately 220,338 of the named insureds had an Alabama address as of the date the class notice was mailed.
All Liberty National insurance policies of any kind are issued from the State of Alabama, and all applications for such insurance are processed by Liberty National's home office in the State of Alabama. Of the total amount of premiums collected by Liberty National in 1992, approximately 48% of the those premiums were collected from residents of the State of Alabama. All premiums for any insurance policies issued by Liberty National are ultimately remitted to Liberty National in Birmingham, Alabama. Premiums notices for all Liberty National insurance policies are mailed from Alabama. The bylaws of the Board of Directors of Liberty National are maintained in the State of Alabama.
The new policies at issue in this litigation were designed and developed by Liberty National personnel in the State of Alabama. Finally, in the event that Liberty National became the subject of rehabilitation proceedings, those rehabilitation proceedings would, pursuant to the Alabama Insurance Code, take place in the State of Alabama under the regulatory authority of the Alabama Department of Insurance.
Assuming that, as claimed, the conduct involved here was a company-wide scheme to defraud concocted in the upper levels of Liberty National's management (which Liberty National denies), then such a scheme clearly would have been concocted and put in motion in the State of Alabama.

*1298 II. CONCLUSIONS OF LAW
Based upon all of the evidence before the Court and with due regard for the foregoing findings of fact and the application of the controlling legal principles, and based on this Court's familiarity with and consideration of the entire record of this proceeding, the Court has reached the following conclusions of law:
1. Maintenance of this suit as class action for purposes of settlement of the claims asserted in this action for the benefits of class members is appropriate and satisfies all requirements under Rule 23(a), Rule 23(b)(1)(A), Rule 23(b)(1)(B), Rule 23(b)(2), Rule 23(c), and Rule 23(e). The standards for class certification are more easily satisfied for purposes of settlement of a class action. See e.g., City of Detroit v. Grinnell Corp., 495 F.2d 448 (2nd Cir.1974); Bowling v. Pfizer, Inc., 143 F.R.D. 141 (F.D. [S.D.] Ohio 1992).
2. This action satisfies all four prerequisites to class certification set forth in Rule 23(a) of the Alabama Rules of Civil Procedure, namely numerosity, commonality, typicality, and adequacy of representation.
3. The class certified by this Court is sufficiently numerous that joinder of all members would be impractical and perhaps impossible. The instant class consists of thousands of present and former policyholders and insureds under approximately 400,000 cancer insurance policies issued by Liberty National, which is clearly a sufficient number to meet the numerosity requirements of Rule 23(a)(1). Charlie Frank Robertson is a member of the class certified by the court. His live testimony at the Fairness Hearing demonstrated to the Court he was an adequate representative with claims typical of the class. Although the courts have held that "the test for typicality, like commonality, is not demanding," the commonality and typicality requirements are satisfied in this case under any standard. See e.g., Forbush v. J.C. Penney, 994 F.2d 1101, 1106 (5th Cir.1993); Shipes v. Trinity Industries, 987 F.2d 311, 316 (5th Cir.1993), cert. denied [___ U.S. ___,] 114 S.Ct. 548 [126 L.Ed.2d 450] (1993). Charlie Frank Robertson's claims arise from the same alleged corporate scheme and pattern and practice of events that give rise to the claims of all other class members, are allegedly based upon the same general corporate motive as the activities complained of by other class members, and are based upon the same general legal theory of a pattern and practice of "company-wide" fraud. Based on the applicable legal authorities, including those cited in the briefs submitted by class counsel and by Liberty National, the Court concludes that typicality and commonality requirements are satisfied. The Court further finds and concludes that the settlement itself shows that the interests of all class members have been fully considered in a fair and reasonable overall settlement. See Jennings Oil Company v. Mobil Oil Corp., 80 F.R.D. 124, 128-29 (S.D.N.Y. 1978).
4. The Court concludes that the Named Plaintiff and his attorneys have adequately represented the Class. The Court specifically concludes that the Class Representative has common interests with the unnamed members of the Class; that the Class Representative has vigorously prosecuted the interests of the Class through qualified counsel; and that the requirement of adequate representation has been fully and completely satisfied in this case. See, e.g., Gonzales v. Cassady, [Cassidy], 574 [474] F.2d 67, 72 (5th Cir.1973); In re Corrugated Antitrust Litigation, 643 F.2d at 212; H.B. Newburg, Newburg on Class Actions, § 11.27A (2d. 1985).
5. The Court has previously found, and hereby reaffirms the conclusion, that this action is appropriate for certification pursuant to Rule 23(b)(2) of the Alabama Rules of Civil Procedure. The Court concludes that, assuming the allegations of the complaint to be true, Liberty National acted or refused to act on grounds generally applicable to the class, thereby making the final injunctive relief and corresponding declaratory relief appropriate with respect to the class as a whole. The Court concludes that the fact that the complaint sought certain monetary relief, and the class settlement provides certain monetary relief in addition to the classwide injunctive and equitable relief and releases *1299 monetary claims, does not preclude certification pursuant to Rule 23(b)(2). See e.g., First Alabama Bank of Montgomery, N.A. v. Martin, 425 So.2d 415 (Ala.1982), cert. denied, 461 U.S. 938 [103 S.Ct. 2109, 77 L.Ed.2d 313] (1983); Penson v. Terminal Transport Company, 634 F.2d 989 (5th Cir. 1981); Nottingham Partners v. Dana, 564 A.2d 1089 (Del.1989); Kincade v. General Tire & Rubber Co., 635 F.2d 501, 502-08 (5th Cir.1981); Nottingham Partners v. Trans-Lux Corp., 925 F.2d 29, 31-32 (1st Cir.1991); Robinson v. Lorrilard [Lorillard] Corp., 444 F.2d 791 (4th Cir.1971). As the Court has previously found, and hereby reaffirms, injunctive and other equitable relief is the predominant relief justified under the circumstances of this case, and the predominant relief afforded by the settlement. Therefore, the Court concludes that final certification and approval of this settlement pursuant to Rule 23(b)(2) is appropriate.
6. The Court concludes that this action is also appropriate for certification pursuant to Rule 23(b)(1) for purposes of settlement, and that the requirements of Rule 23(b)(1)(A) and 23(b)(1)(B) are satisfied on the facts of this case. The Court incorporates by reference and makes final the findings and conclusions previously set forth in the Court's Order of February 4, 1994. Based upon those findings and conclusions, which are hereby reaffirmed and made final by the Court, the Court concludes that certification of this class action settlement pursuant to Rule 23(b)(1)(A) and Rule 23(b)(1)(B) is appropriate.
7. The Court concludes that because this class action meets the requirements of Rule 23(b)(1) and 23(b)(2), certification pursuant to Rule 23(b)(3) would be inappropriate. The Court concludes that the res judicata effect given to judgments rendered in class actions under 23(b)(1) and 23(b)(2) is superior; that certification under Rule 23(b)(3) would not be in the best interests of the class as a whole or the class members; that certification pursuant to Rule 23(b)(3) would endanger the legal interests of the class as a whole; and accordingly, that certification pursuant to Rule 23(b)(3) is inappropriate. See e.g., Wetzel v. Liberty Mutual Insurance Company, 508 F.2d 239, 252 (3rd Cir.1974 [1975]), cert. denied, 421 U.S. 1011 [95 S.Ct. 2415, 44 L.Ed.2d 679] (1975).
8. The Court concludes that the right to opt-out is not required by Rule 23, the United States Constitution or the Alabama Constitution for purposes of this class action settlement. To the extent opt-out is available at all in a class action certified under Rule 23(b)(2), the granting or denial of opt-out is discretionary with the Court. See e.g., Penson v. Terminal Transport Company, 634 F.2d 989 (5th Cir.1981). In the exercise of its discretion, this Court concludes that an opt-out under the circumstances presented by the entirety of this record would be detrimental to the interests of the class members and the class as a whole. This conclusion is bolstered by the inherent conflicts that would ensue between class members in individual punitive damage suits if opt-outs were permitted, as demonstrated by the live testimony of objectors' counsel Champ Lyons, Jr., at the Fairness Hearing.
9. The Court expressly concludes that the granting of opt-out rights in this class action is not required and is neither appropriate nor desirable. This Court would reach the same conclusion whether the Court proceeded under Rule 23(b)(1) alone, Rule 23(b)(2) alone, or, as the Court has done, under both Rule 23(b)(1) and Rule 23(b)(2). The Court has given due consideration to the authorities cited by the objectors, including Holmes v. Continental Can Co., 706 F.2d 1144, 1155-56 (11th Cir.1983), and the Court concludes that this class is sufficiently cohesive, that there is a sufficient jural relationship between and among the members of the class, and that the claims of the class members are sufficiently homogenous that opt-out is unnecessary and inappropriate.
10. The Court concludes that any grant of opt-out privileges to any class members would be inconsistent with the resolution of the claims of the class as a whole pursuant to Rule 239(b)(2) and Rule 23(b)(1). If opt-out were permitted, a few class members who opt-out, if successful in their individual lawsuits, could receive an early trial and would no doubt attempt to recover punitive damages *1300 for the entire pattern and practice of conduct here, to the detriment of remaining class members. Indeed, as the Court previously concluded, and hereby reaffirms, such a scenario poses a substantial threat to the interests of the class as a whole if the merit of the claims is what plaintiff and the objectors contend, in that there is the potential for complete destruction and all chances of punitive or other recovery to the remaining class members, as well as a potential for loss of all insurance coverage any class members may have with Liberty National.
11. The Court concludes that the denial of opt-out privileges does not violate either the Due Process or jury trial guarantees of the Alabama Constitution or the United States Constitution, or violate Rule 23 of the Alabama Rules of Civil Procedure. As a matter of law, the Court concludes that no plaintiff has a right to punitive damages. Moreover, Rule 23(b)(1) and Rule 23(b)(2) have often been applied by the Courts of virtually every state and federal courts. Constitutional challenges to class action litigation or settlement pursuant to Rule 23(b)(1) and Rule 23(b)(2) have repeatedly been rejected. See e.g., Williams v. Burlington Northern, Inc., 832 F.2d 100, 103-04 (7th Cir.1987); Elliott v. Weinberger, 564 F.2d 1219, 1229 n. 14 (9th Cir.1977); Nottingham Partners v. Dana supra; Nottingham Partners v. Trans-Lux Corp., supra; Wetzel v. Liberty Mutual Insurance Co., supra; Kincade v. General Tire & Rubber Co., supra; Robertson v. National Basketball Association, 556 F.2d 682, 685-86 (2nd Cir.1977); see also, Penson v. Terminal Transport Co., 634 F.2d 989 (5th Cir.1981). Class action settlements permissibly may preclude the opportunity for jury trial just as Rule 56 and Rule 12 of the Alabama and Federal Rules of Civil Procedure, and other procedural mechanisms, may result in the preclusion of a jury trial, without violating the state or federal constitutions.
12. The Court concludes that the form and method of notice given to class members in connection with the proposed class action settlement satisfies all legal requirements of Rule 23 and all constitutional requirements of Due Process. Such notice constitutes the best notice practicable under the circumstances, and is sufficient to effect individual notice to all class members who can reasonably be identified through reasonable effort. Even though Rule 23(c)(2) does not technically require notice in class actions of the type at issue here, see e.g., Eisen v. Carlisle and Jacquelin, 417 U.S. 156, 177 [94 S.Ct. 2140, 2152, 40 L.Ed.2d 732] (1974), the class notice at issue here was fully sufficient to satisfy those requirements. The class notice properly identified the plaintiff class and sufficiently described the terms of the settlement so as to alert members with adverse viewpoints to investigate and to come forward, object and be heard.
13. The Court concludes that Liberty National, class representatives and Class Counsel had no obligation to inform unnamed class members or objectors of the settlement negotiations. See e.g., Bowling v. Pfizer, Inc., 143 F.R.D. 141, 154-56 (S.D.Ohio 1992).
14. The Court concludes that a class action settlement may release not only the claims alleged in the complaint and before the Court, but also claims which could have been alleged by reason of, or in connection with, any matter or scheme or facts set forth or referred to in the complaint. Even where a court does not have the power to adjudicate a claim, it may still approve release of that claim as a condition of the settlement of an action before it. See, e.g., In re Corrugated Container Antitrust Litigation, 643 F.2d 195, 221 (5th Cir.1981); Nottingham Partners v. Trans-Lux Corp., 925 F.2d 29 (1st Cir.1991); Huguley v. General Motors Corp., 999 F.2d 142, 145 (6th Cir.1993). Grimes v. Vitalink Communications Corp., 17 F.3d 1553 1994, WL 70482 (3rd Cir. March 9, 1994).
15. The Court concludes that the practice of stipulation to certification for the limited purpose of settlement is well-supported by prior precedent and does not impugn the fairness of the settlement in any respect. See e.g., In re Beef Industry Antitrust Litigation, 607 F.2d 167, 177-78 (5th Cir.1979), cert. denied 452 U.S. 905 [101 S.Ct. 3029, 69 L.Ed.2d 405] (1981); City of Detroit v. Grinnell Corp, 495 F.2d 448, 464-466 (1974); *1301 Bowling v. Pfizer, Inc., 143 F.R.D. 141 (S.D.Ohio 1992); In re Corrugated Container Antitrust Litigation, 643 F.2d 195, 223 (5th Cir.1981); Hill v. Art Rice Realty Co., 66 F.R.D. 449 (N.D.Ala.1974), affirmed 511 F.2d 1400 (5th Cir.1975).
16. The Court concludes that there is no requirement that out-of-state plaintiff class members/objectors have "minimum contacts" with the State of Alabama in order to be bound by the class action settlement at issue here. See, e.g., Phillips Petroleum Co. v. Shutts, 472 U.S. 797, 808 [105 S.Ct. 2965, 2972, 86 L.Ed.2d 628] (1985). See also, Hansberry v. Lee, 31 [311] U.S. 32, 40-41 [61 S.Ct. 115, 117-18, 85 L.Ed. 22] (1940). There is no constitutional requirement that out-of-state plaintiff class members be given the opportunity to opt out of a 23(b)(2) class action. Shutts, 472 U.S. at 812, n. 3 [105 S.Ct. at 2974, n. 3].
17. The Court concludes the State of Alabama has significant contacts and a significant aggregation of contacts with the claims asserted by each member of the class, and the State of Alabama has compelling state interest in this action, thereby making application of Alabama law to this class action neither arbitrary nor unfair. See e.g., Phillips Petroleum Company v. Shutts, 472 U.S. 797, 821-22 [105 S.Ct. 2965, 2979-80, 86 L.Ed.2d 628] (1985). However, even if the substantive laws of other states were applied, this Court's conclusions would not change.
18. The Court concludes that the proposed settlement is a reasonable compromise of the claims of the class and its members, is fair and reasonable and, as modified, is adequate. The Court finds that approval of this settlement is in the best interest of the class. The Court concludes that this settlement achieves a definite and certain result for the benefit of class members which is preferable to continuing litigation in which class members must necessarily confront and overcome many obstacles, the prospect of an uncertain result, and the prospect of any claim for punitive damages being cut off after an award to the first few litigants, and other uncertainties.
19. The Court concludes that the proposed settlement as modified is and must be considered fair, reasonable and adequate in all respects, and in the best interest of the class as a whole and of class members. Considering the nature of the litigation and all of the prevailing circumstances, the Court would detrimentally jeopardize a substantial recovery if the Court denied approval. The Court concludes that the settlement is due to be and is hereby approved as modified, and that the injunctions provided for thereby are due to be issued in order to protect the interests of the class as a whole, effectuate the settlement, and protect the jurisdiction of this Court over the subject matter of the action and the settlement.
20. The Court concludes that the settlement was reached by the parties after several months of arms-length negotiations, that the overall fairness of the settlement as modified demonstrates the absence of collusion and the adequacy of representation, and that the settlement as modified represents a fair and valid compromise between the competing positions of the plaintiff and the plaintiff class, on the one hand, and the defendant and released parties on the other.
21. The Court concludes that the named parties and their counsel have successfully brought this difficult and complex litigation to a prompt and fair conclusion, on terms and conditions which this Court concludes are fair and reasonable to the class and defendant Liberty National alike, having due regard for the risks, hazards and expense which continued litigation would entail. The Court concludes that by reaching the settlement at an early stage of the litigation, the parties have commendably reduced the costs connected with this litigation, and that the parties have further reduced the cost through efforts at informal discovery which the courts have long commended. See e.g., Cotton v. Hinton, 559 F.2d 1326, 1332 (5th Cir.1977).
22. The Court concludes that Class Counsel have accurately and ably evaluated the legal, factual and remedial issues and obstacles involved in this extremely complex litigation, and thereby reached a proposed settlement which this Court could have approved *1302 as being fair, reasonable and adequate without modification, but which was substantially improved for the protection of class members by way of modifications proposed by the Court and accepted by Class Counsel and other parties.
23. Based on the findings and conclusions set out hereinabove, and in this Court's February 4, 1994, Order and Judgement Conditionally Approving the Class Action Settlement, proposing modifications to the Settlement, which modifications the Court understands will be accepted by named plaintiff and Class Representative, Class Counsel, Liberty National and its counsel if no further modifications are made, this Court will enter a final judgment in the form of the Order and Final Judgment attached hereto immediately upon the formal written acceptance of the Court's February 4, 1994, modifications.
24. All objections and motions of objectors not previously ruled upon are hereby overruled. For the reasons set forth in Liberty National's written opposition, which opposition is incorporated herein by reference, all petitions by objectors' counsel for fee awards are denied and overruled. The Court finds that no objector or counsel for any objector has enhanced the settlement. The Court's February 4, 1994, modifications were not ordered on the basis of any objection, but on the basis of the Court's own independent review of the settlement. The objectors and their counsel continue to object to the settlement despite the modifications. No applicable legal authority has been cited in support of a fee award to objecting counsel in a private class action settlement proceeding. In fact, to award counsel for objectors a fee would place them in an irreconcilable financial conflict with their clients on appeal.
25. Class Counsel's petition for an award of attorneys' fees will be addressed in a separate order.
DONE AND ORDERED this 26th day of may, 1994.
 /s/ William H. Robertson
 William H. Robertson,
 Circuit Judge

IN THE CIRCUIT COURT OF BARBOUR COUNTY, ALABAMA CLAYTON DIVISION

Charlie Frank Robertson, individually and on behalf of a class, Plaintiffs

v.

Liberty National Life Insurance Company, Defendant.

Civil Action No. CV-92-021

ORDER AND FINAL JUDGMENT
A Settlement Hearing having been held before this Court on January 20, 21 and 24, 1994 pursuant to this Court's order of June 16, 1993, as thereafter amended by subsequent orders, to determine whether this Court should approve as fair, adequate and reasonable a settlement of this action upon the terms and conditions of the Stipulation and Agreement of Compromise and Settlement dated June 16, 1993 and executed by all parties, as thereafter amended ("Stipulation" or "Stipulation of Settlement"); it appearing that due notice of said Settlement Hearing was given in accordance with the terms of the aforesaid order; the Court having determined that notice to the Class, as described in the aforesaid order and subsequent orders, was the best practicable notice under the circumstances, and fully complies with all requirements of Due Process, and all requirements of Alabama Rule of Civil Procedure 23; the respective parties having appeared by their attorneys of record; the Court having received and considered arguments and evidence in connection with the proposed compromise and settlement of the action; the attorneys for the respective parties having been heard; and opportunity to be heard having been given to all of the persons requesting to be heard in accordance with the aforesaid order; and the proposed Settlement and all other matters of record in this action having been heard and considered by the Court; and based on the Findings of Fact and conclusions of Law set forth in a separate order entered contemporaneously herewith, it is therefore ORDERED, ADJUDGED AND DECREED as follows:
1. For purposes of considering, approving and effectuating the Stipulation of Settlement *1303 and to fairly and adequately protect the interests of the members of the class, this Court has previously ordered, and hereby orders and confirms, that this action is to be maintained as a class action pursuant to Ala. R.Civ.P. 23(b)(2), for a Plaintiff Class consisting of:
All persons who now or in the past were insured under any cancer policy which (1) was issued by Liberty National Life Insurance Company ("Liberty National") on or before August 29, 1986, and (2) which provided benefits for radiation, chemotherapy, prescription chemotherapy drugs, and other out-of-hospital prescription drugs without monetary limits, and (3) was paid and in force (or in the grace period) on or after August 29, 1986, regardless of whether such policy remains in force, thereafter lapsed or was replaced by a different Liberty National cancer policy after that date; provided, however, that (i) any insured who is or was a named plaintiff in any separate lawsuit which was filed on or before March 10, 1993 and which alleges fraud, concealment, failure to disclose or misrepresentation in connection with the purchase, sale, issuance, exchange or replacement of any one or more Liberty National cancer insurance policies is excluded from the Class unless such lawsuit has been voluntarily dismissed without prejudice on or before the date this Settlement is finally approved by the Circuit Court of Barbour County, Alabama; (ii) any insured whose "old policy" lapsed prior to August 29, 1986 and was not thereafter reinstated (after payment by the insured of all delinquent premiums) by Liberty National is excluded from the Class; and (iii) any insured whose first Liberty National cancer policy was a new policy form issued after August 29, 1986 is excluded from the Class.
2. On February 4, 1994, this Court entered an Order Conditionally Approving Class Action Settlement, the full text of which is incorporated herein by reference. The findings and conclusions set forth in that Order are hereby reaffirmed, and made final, the named parties and their counsel having notified the Court of their acceptance of the modifications to the class action settlement set forth therein. Pursuant to said Order of February 4, 1994, the class action certification pursuant to Rule 23(b)(2) was reaffirmed and the class action was additionally certified pursuant to Rule 23(b)(1)(A) and Rule 23(b)(1)(B) for purposes of settlement, all of which is hereby reaffirmed, incorporated herein by reference and made final.
3. The Court has heretofore found and hereby finds and reaffirms for purposes of settlement that the Named Plaintiff is an adequate representative of the Class and that all requirements of Ala.R.Civ.P. 23(a), 23(b)(1)(A), 23(b)(1)(B), and 23(b)(2) are met. The Court expressly finds for purposes of settlement that the Class is so numerous that joinder of all members is impracticable; that there are questions of law and fact common to the Class; that the claims of the Named Plaintiff are typical of the claims of the Class; that the Class Representative and Class Counsel have fairly and adequately represented and protected the interests of the Class and will continue to do so; that the prosecution of separate actions by individual class members would create a risk of varying or inconsistent adjudications which would establish incompatible standards of conduct for the defendant, and would as a practical matter be dispositive of the interests of other class members or substantially impair or impede their ability to protect their interests; that, assuming the allegations of the complaint (which Liberty National denies) to be true, Liberty National has acted on grounds generally applicable to the class, thereby making appropriate final equitable and injunctive relief with respect to the class as a whole; that the nature of the interests of the class members, the nature of the Settlement, and the fact that the vast majority of class members have not suffered any actual out-of-pocket monetary losses or damages (other than allegations concerning increased premiums) at this time, make this action inappropriate for certification under Ala.R.Civ.P. 23(b)(3); and that maintenance of this action pursuant to Ala.R.Civ.P. 23(b)(1)(A), 23(b)(1)(B) and 23(b)(2), separately and severally, is superior to any other method of proceeding with these claims.
*1304 4. Subject to the terms and conditions of the Stipulation, as amended and modified, Liberty National Life Insurance Company is hereby enjoined and ordered to perform its obligations under the Stipulation of Settlement (as heretofore amended by the parties, including those modifications set forth in this Court's February 4, 1994 Order Conditionally Approving Class Action Settlement), which Stipulation of Settlement (as so amended and modified) is hereby affirmed and approved in its entirety and incorporated herein by reference. The Court expressly finds that the primary relief provided for by the Stipulation and Settlement, and the primary relief which would be justified by the alleged (but denied) conduct, is injunctive and further equitable relief in the nature of declaratory relief, reformation of certain insurance policies, and ancillary restitution. The provisions in the Stipulation of Settlement for incidental monetary relief and supplemental extracontractual monetary relief are ancillary to the primary equitable and injunctive relief.
5. Subject to the terms and conditions of this Court's Order of February 4, 1994 and of the Stipulation of Settlement, as modified and amended, Liberty National Life Insurance Company and its successors and assigns, and all other entities and individuals acting in concert with Liberty National are hereby permanently ENJOINED:
(a) From instituting, engaging or participating in, maintaining, authorizing or continuing any of the alleged cancer policy exchange programs as defined in the Settlement and Stipulation;
(b) From instituting, engaging or participating in, maintaining or authorizing any future program relating to the exchange, substitution, switching or attempting to exchange, substitute, or switch Liberty National cancer insurance policies whereby the substituted Liberty National cancer policy excludes or limits any benefits that are provided in the replaced Liberty National cancer policy, without full disclosure of the benefits and coverages in the replaced and substituted policies, including disclosure of any benefits in the original policy which are excluded or limited benefits in the substituted policies;
(c) With respect to those Class Members specified in paragraph II-6 of the Stipulation, to provide benefits without monetary limits for claims incurred after June 16, 1993 for radiation, chemotherapy, prescription chemotherapy drugs, and out-of-hospital prescription drugs prescribed in connection with the treatment of cancer under the new policies of such Class Members currently in force, so long as the new policies remain in force and premiums are paid, subject to the terms and conditions of the Stipulation, as amended and modified, and the terms and conditions of this Court's Order of February 4, 1994;
(d) With respect to those Class Members specified in paragraph II-6 of the Stipulation, to reform (or treat as having been reformed) the new policies (as defined in the Stipulation) of Class Members presently in force to provide prospective coverage without monetary limits (so long as each such new policy is kept in force and all premiums are paid) for otherwise covered radiation, chemotherapy, and prescription chemotherapy drugs administered to the named insured or any covered person under the new policy in connection with the treatment of cancer, and to provide coverage without monetary limits for other out-of-hospital prescription drugs prescribed to the named insured or any covered person under the new policy in connection with the treatment of cancer, for claims incurred subsequent to June 16, 1993, such reformation to be implemented upon the later of (i) the expiration of the time appeal from this Order and Final Judgment, or (ii) the final binding affirmance of this Order and Final Judgment in the event of any appeal or other petition for review, if any appeal or petition for review is taken regarding this action. No additional premium shall be charged for this additional coverage; provided, however, that claims paid under this additional coverage or waiver may be considered as claims experience for the purposes of future premium adjustments, subject to the provisions of paragraph II-8 of the Stipulation. This paragraph shall require reformation *1305 to be implemented upon the later of the expiration of the time for appeal from this Order or final binding affirmance in the event of appeal, with an effective date of June 16, 1993, such that all claims incurred after June 16, 1993 will be eligible for the reformed coverage.
(e) From increasing the premiums on the old cancer policies or the new cancer policies of Class Members prior to the later of (i) January 1, 1996; (ii) one year from the date of this Order; or (iii) one year after entry of judgment or final order by the Alabama Supreme Court, without regard to whether any petition for certiorari or appeal to the United States Supreme Court is filed with respect thereto;
(f) With respect to those Class Members specified in paragraph II-10 of the Stipulation, to make restitution to the named insured for otherwise valid benefit claims accrued under the new policies of Class Members on or before June 16, 1993, based upon 150% of the amount by which the total benefits that would have been received under the class member's "old policy" for the same overall cancer treatment exceeds the total benefits actually paid by Liberty National for the class member's overall cancer treatment under the "new policy," subject to the terms, conditions and procedures set forth in paragraphs II-10 and II-11 of the Stipulation, as amended by this Court's Order of February 4, 1994.
(g) With respect to those Class Members specified in paragraph II-6 of the Stipulation, from applying or enforcing any exclusion of benefits for out-of-hospital prescription drugs prescribed in connection with the treatment of cancer and from applying or enforcing any monetary limits or caps upon the benefits for radiation, chemotherapy or prescription chemotherapy drugs which are contained in any new policy owned by such Class Member, to any claim incurred after June 16, 1993, subject to the terms and conditions of Stipulation and this Court's Order of February 4, 1994.
(h) Subject to any regulatory jurisdiction of any insurance department within the states in which Liberty National's cancer policies were approved for issuance, to pool the experience of all Class Members in all states and file all future premium rates based on the pooled claims and premiums experience of all Class Members in all states in which the old and new cancer policies were approved for issuance, and to use its best efforts to obtain acceptance from all state insurance departments to allow Liberty National to pool the experience of all Class Members for rate making purposes.
The provisions of subsections (a), (b) and (e) of this paragraph 4 shall be effective unless and until such time as this Order and Final Judgment is vacated, modified, reversed or remanded on appeal, in whole or in part. All other aspects of the final relief set forth in this Order shall be automatically stayed in the event of appeal as contemplated by the terms and conditions of the Stipulation.
6. Consistent with the Findings of Fact and Conclusions of Law entered contemporaneously herewith, and subject to this Court's retention of jurisdiction to enforce this Order and the Stipulation of Settlement, as amended and modified, all claims asserted in this action, including those claims asserted in Named Plaintiff's Amended Complaint, and all claims which have been or could be asserted (by intervention or otherwise) by or on behalf of any Class Member relating to the "alleged cancer exchange programs" or the "Released Claims" (as those terms are defined in the Stipulation), are DISMISSED in their entirety on the merits, with prejudice, and defendant Liberty National (and the related beneficiaries of the Release set forth in Section III of the Stipulation of Settlement) are hereby RELEASED from all claims, actions, causes of action and liabilities which were or could be asserted by or on behalf of any Class Members, which relate to the alleged cancer exchange programs or the Released Claims as defined in the Stipulation of Settlement. The Release provided in Section III of the Stipulation is hereby approved and made effective and incorporated herein by reference.
*1306 7. Named Plaintiff and each and all Class Members are hereby permanently ENJOINED, precluded and barred from filing, initiating, asserting, maintaining, pursuing, or continuing or participating as a litigant (by intervention or otherwise) in any action, whether an individual lawsuit or class action, in any court, asserting any of the claims dismissed herein or any of the Released Claims as defined in the Stipulation of Settlement; provided, however, that neither this injunction, nor the settlement benefits provided by the Stipulation of Settlement described in this Order, shall apply to any individual who was a named plaintiff in any separate action filed on or before March 10, 1993 which alleges fraud, concealment, failure to disclose or misrepresentation in connection with the purchase, sale, issuance, exchange or replacement of any one or more Liberty National cancer policies, unless said action has been voluntarily dismissed without prejudice prior to the date of this Order and Final Judgment.
8. The Escrow Agreement entered into June 16, 1993, between Liberty National and the First Commercial Bank attached as Exhibit "E" to the Stipulation is approved and its terms and conditions are ratified by the Court, and the amendment to said agreement provided for by the Court's Order dated March 28, 1994 requiring escrow of an additional $10,000,000.00 is hereby ratified and approved by the Court. Subject to the terms and conditions of the Stipulation, Liberty National is hereby enjoined to implement and honor the terms of the Escrow Agreement, as amended, and the Stipulation, as amended and modified, with respect to each of the $2,000,000 and $9,000,000 monetary relief funds.
9. All Proof of Claim Forms submitted on or before December 20, 1993 by each Class Member entitled under the Stipulation (and the instructions contained in the Proof of Claim Form) to submit a Proof of Claim Form shall be processed in the manner as designated in the administrative procedure set forth in the Stipulation of Settlement. Subject to the terms of the Stipulation, persons who did not submit a Proof of Claim Form on or before January 20, 1994 shall be forever barred from claiming or receiving any of the restitution or any other monetary benefits set forth in paragraphs II-9, II-10 and II-12 of the Stipulation, as amended and modified. Subject to the terms of the Stipulation, Proof of Claim Forms submitted after December 20, 1993 but on or before January 20, 1994 shall be processed in accordance with the Stipulation after all timely Proof of Claim Forms have been processed, subject to Liberty National's right to object to the Proof of Claim Form as being untimely. Any such objection to the timeliness of Proof of Claim forms shall be filed and ruled upon once all timely Proof of Claim forms have been processed. The Proof of Claim Form attached to the Notice is hereby finally approved as to form and content.
10. There being no reason for delay, the Clerk of the Court is hereby directed, pursuant to Ala.R.Civ.P. 54(b), to enter this order as a FINAL JUDGMENT. Subject to the terms and conditions of the Stipulation, Plaintiff's counsel, heretofore approved by the Court as Class Counsel, being Jere Beasley, Beasley, Wilson, Allen, Main & Crow, P.C. and Walter R. Byars, Steiner, Crum & Baker, are jointly awarded $4,500,000 in full payment of all attorneys' fees which sum has been paid by Defendant Liberty National Life Insurance Company to the Escrow Agent in accordance with the terms of the Escrow Agreement and the Stipulation of Settlement, and $35,000 in full payment of all expenses incurred or to be incurred by Class Counsel in this action, which shall be paid within 5 days to the Clerk of Court, to be disbursed upon expiration of the time for appeal or final binding affirmance in the event of appeal. Said attorneys fees together with interest or investment proceeds shall be disbursed in accordance with any subject to the terms and conditions of the Stipulation and the Escrow Agreement.
11. Subject to and in accordance with the terms of the Stipulation, court costs are taxed against Defendant Liberty National Life Insurance Company, which costs shall include all fees and expenses of actuarial or other experts or consultants employed by Class Counsel. Class Counsel shall submit an invoice for such expenses to Liberty National which Liberty National shall pay within five days, of receipt, unless the amount of *1307 the invoice or Class Counsel's entitlement under the Stipulation in any respect in which case such dispute shall be resolved by this Court pursuant to its retention of continuing jurisdiction. Pursuant to Paragraph 12 hereof, the Court reserves jurisdiction to award additional fees and expenses set forth in the Stipulation of Settlement.
12. This Court reserves and maintains continuing jurisdiction over all matters relating to the Settlement or the consummation of the Settlement; the validity of the Settlement; the construction and enforcement of the Settlement and any orders entered pursuant thereto; any disputes which may arise between Class Members with respect to the persons entitled to receive the proceeds of any amounts payable to Class Members under the Stipulation; and the entry and enforcement of this FINAL JUDGMENT, including, in the event of reversal, vacation or modification of this final judgment, jurisdiction to revoke this Order and Final Judgment in its entirety and to reinstate all claims dismissed or claims, actions, causes of action and liabilities released pursuant to paragraph 5 hereof; to tax court costs (subject to the terms and conditions of the Stipulation) which shall consist of all expenses for the Class notice, fees and expenses of actuarial or other experts or consultants, fees and expenses of the Special Master, and all other matters pertaining to the Settlement or its implementation and enforcement.
13. All pending motions of objectors and intervenors not previously ruled upon are hereby denied and overruled. The Court incorporates by reference herein its specific rulings on pending motions set forth in the transcript of the May 19, 1994 hearing. The Court further incorporates by reference herein and makes final its Order of February 4, 1994.
The Court has set forth its Findings of Fact and Conclusions of Law in a separate order entered contemporaneously herewith. Done this 26th day of May, 1994.
 /s/ William H. Robertson
 Circuit Judge
NOTES
[1] The following cases are all decided by this opinion: 1931604Thomas Beck, et al. v. Charlie Frank Robertson and Liberty National Life Insurance Company; 1931605David Cox, et al. v. Charlie Frank Robertson and Liberty National Life Insurance Company; 1931606Vernon E. Adamson, Sr., et al. v. Charlie Frank Robertson and Liberty National Life Insurance Company; 1931607Darlene Skinner, et al. v. Charlie Frank Robertson and Liberty National Life Insurance Company; 1931610David L. Lynd, et al. v. Charlie Frank Robertson and Liberty National Life Insurance Company; 1931611Lucille Williams, et al. v. Charlie Frank Robertson and Liberty National Life Insurance Company; 1931612Opal M. Soesbe v. Charlie Frank Robertson and Liberty National Life Insurance Company; 1931613John Henry Lamey, Jr., et al. v. Charlie Frank Robertson and Liberty National Life Insurance Company; 1931614Douglas C. Hammac, et al. v. Charlie Frank Robertson and Liberty National Life Insurance Company; 1931615Artemus Lane Nobles, et al. v. Charlie Frank Robertson and Liberty National Life Insurance Company; 1931616Florence W. Clayton, et al. v. Charlie Frank Robertson and Liberty National Life Insurance Company; and 1931617Larry L. Andrews, et al. v. Charlie Frank Robertson and Liberty National Life Insurance Company.
[*] Although Chief Justice Hooper was not a member of this Court when this case was orally argued, he has listened to the tape of that oral argument.